COMMONWEALTH vs. KEVIN KELLEY.

Middlesex.    March 1, 1976. — April 15, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& WILKINS, JJ.

*Practice, Criminal,* Directed verdict, New trial.

In a criminal case, the rights of the defendant to a directed verdict
became fixed at the time the Commonwealth rested at the close of
its evidence and the defendant's motion then filed for a directed
verdict was denied, even though thereafter he chose to present fur-
ther evidence. [149-150]

On evidence introduced up to the time the Commonwealth rested its
cases on complaints for breaking and entering and larceny, motions
for directed verdicts then filed were properly denied where the
defendant was directly identified by eyewitnesses, and evidence of
his direct participation was bolstered by evidence of his later asso-
ciation with the alleged driver of the "getaway" car. [150-151]

There was no error in a trial judge's denial of motions for new trials
of criminal cases on the ground of newly discovered admissions of
guilt by one other than the defendant. where there was evidence at
hearings that the defendant knew of such admissions before his trial
and witheld such information from his attorney, and where the
judge could find such admissions were suspect as to credibility. [151-
152]

COMPLAINTS received and sworn to in the First District
Court of Southern Middlesex on July 12, 1974.

The cases were tried before *Tuttle, J.*

*Francis C. Newton, Jr.,* for the defendant.

*Robert M. Buchanan,* Legal Assistant to the District
Attorney, for the Commonwealth.

HENNESSEY, C.J.    The defendant was convicted of the
crimes of breaking and entering in the daytime, and lar-
ceny of less than $100, after trial by jury in a District
Court. The defendant was sentenced to serve three months
in a house of correction as to each conviction, with the
sentences to be served concurrently. The judge entered an

order staying execution of the sentences pending appeal. The appeal is before us on the defendant's bill of exceptions.

The defendant argues two issues: first, that the denial of his motions for directed verdicts as to both complaints was error; and second, that there was error in the denial of his motions for a new trial. We conclude that there was no error and affirm the judgments.

The evidence most favorable to the Commonwealth was as follows. John R. McLean, Jr., a detective with the Sudbury police department, received a call at approximately 11:15 A.M. on July 3, 1974, and went to the residence of Frank J. Vazal at 222 Hudson Road in Sudbury where he entered the house through a screen door leading to a porch at the rear of the house. The door had some scratches near the latch. An inspection of the house revealed that furniture drawers had been opened and items had been pulled from the drawers in various rooms. An opened red-handled greenhouse knife was also found.

Mrs. Vazal, who resides at 222 Hudson Road, had been away from the house from about 10 A.M. to noon on July 3, 1974. She testified that she left the house locked and that she had never seen the red-handled knife before. She described the condition of the premises before and after the burglary. She discovered that two children's banks, a piggy bank and another bank in the shape of a Tootsie Roll, which combined had contained a total of between $10 and $24, were missing.

About 11:15 A.M. on July 3, 1974, two sisters, Denise Dansro and Renée Dansro, ages fifteen and seventeen, who resided at 221 Hudson Road in Sudbury, across Hudson Road from the Vazal home, saw a maroon 1966 Chevrolet Chevelle automobile turn onto Crestview Drive, a short cul-de-sac road running off Hudson Road and along one side of the Dansro home. The car turned around at the end of Crestview Drive, returned to a spot near the intersection with Hudson Road, and parked. The driver remained in the vehicle. Because Crestview Drive has little traffic and the car had not stopped near any of the houses on Crestview Drive, the Dansro sisters were curious as to

why it was there. Within a few minutes a man carrying a brown paper bag in his arms ran toward Hudson Road down a lightly wooded depression between the Vazal house and a neighboring house on property next door or adjacent to the Vazal property. The Dansro girls were in front of their home and observed him run down to Hudson Road, arriving at a spot about 130 feet from them. Denise was on the lawn and Renée was a few feet away on the front steps of their house. Each of the sisters, later at the trial, identified the man she had observed as the defendant, Kevin Kelley. Although not certain just how long she had observed Kelley, each girl admitted that it was no more than twenty-five seconds.

As the man ran to Hudson Road, the car turned out of Crestview Drive onto Hudson Road, stopped to pick up the man, and sped off. The Dansro girls immediately called the police and provided a description of the men.

Subsequently, one Mulkern was charged by the Sudbury police with having been the driver of the maroon Chevrolet. Thereafter, Detective McLean by chance observed the defendant Kelley in court on another matter with Mulkern. Because Kelley fitted the descriptions given by the Dansro sisters, McLean obtained pictures of Kelley. Approximately a week after the event, McLean showed ten photographs of men selected to resemble each other, including one of Kelley, to each of the sisters at different times, and each picked out Kelley's picture.

At the close of the Commonwealth's evidence motions were made on behalf of the defendant for directed verdicts as to both charges. The motions were denied and the defendant's exceptions were saved.

Thereafter the defendant, and witnesses called by him, presented evidence which was essentially of an alibi nature. This included testimony by the defendant that he did not commit the crimes and that he had never been near the Vazal house in Sudbury. The defendant's motions for directed verdicts were renewed at the close of all the evidence. They were again denied, and his exceptions were again saved.

1. There was no error in the denial of the motions for

directed verdicts. On this issue, we consider only the evidence introduced up to the time that the Commonwealth rested its case, and the defendant first filed his motions for directed verdicts.[1] See G. L. c. 278, § 11. Cf. *Commonwealth v. Ferguson,* 365 Mass. 1, 10 n.6 (1974), and authorities cited. But cf. *Commonwealth v. Lussier,* 333 Mass. 83, 88 (1955). For the different rule in civil cases, see *Martin v. Hall,* 369 Mass. 882, 884-885 (1976). The sole question raised by the motions is whether "there was sufficient evidence of the defendant's guilt to warrant the submission of the cases to a jury." *Commonwealth v. Altenhaus,* 317 Mass. 270, 271 (1944). *Commonwealth v. Baron,* 356 Mass. 362, 365 (1969). "For the purpose of answering this basic question we must consider and determine whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient, as to each [complaint], to permit the jury to infer the existence of the essential elements of the crime charged in that [complaint]." *Commonwealth v. Sandler,* 368 Mass. 729, 740 (1975).

Applying these standards, we conclude that the motions for directed verdicts were properly denied. Clearly the evidence warranted conclusions that the two crimes of breaking and entering and larceny had been committed; the defendant does not argue to the contrary. His sole contention is that the evidence does not warrant a conclusion that he committed the crimes. We do not agree. The jury could

---

[1] This is the first time that this court has stated that, in a criminal case, the defendant's rights became fixed at the time that the Commonwealth rested and the defendant's motions for directed verdicts had been denied, even though the defendant chose thereafter to present further evidence. As a practical matter, it makes no difference in the instant case whether the defendant's rights are assessed at the earlier time when he filed his motions or the later time when he renewed his motions, since the Commonwealth's position as to proof clearly did not improve with the presentation of the defendant's case.

It is possible, also, that the Commonwealth's position as to proof might deteriorate between the time that the Commonwealth rested and the close of all the evidence. In that event, the defendant's rights would, of course, on renewal of his motions, be reappraised in consideration of all the evidence.

properly rest their verdicts, among other facts, on the evidence of the defendant's presence near the house at a time within that period of a few hours where the jury could find the crimes were committed; the evidence that the defendant ran down between the houses and entered an automobile which had been stationed in what could be found to be a "getaway" position; and that the defendant carried from the scene a parcel which was consistent in size with the items missing from the house. See *Commonwealth* v. *Carita*, 356 Mass. 132, 136-137 (1969); *Commonwealth* v. *Belton*, 352 Mass. 263, 266-267, cert. denied, 389 U.S. 872 (1967); *Commonwealth* v. *Eppich*, 342 Mass. 487, 492 (1961); *Commonwealth* v. *Smith*, 342 Mass. 180, 181-184 (1961); *Commonwealth* v. *Burke*, 339 Mass. 521, 524-531 (1959); *Commonwealth* v. *Oates*, 327 Mass. 497, 499 (1951); *Commonwealth* v. *Shea*, 324 Mass. 710, 712-714 (1949); *Commonwealth* v. *Curtis*, 318 Mass. 584 (1945); *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 75-76 (1973).

We are not convinced by the defendant's argument that he was convicted by mere proof of association, at a time some days after the alleged crimes, with one Mulkern, who allegedly drove the automobile at the scene of the crimes. Cf. *Commonwealth* v. *Perry*, 357 Mass. 149, 151 (1970); *Commonwealth* v. *Fancy*, 349 Mass. 196, 200-201 (1965); *Commonwealth* v. *Murphy, supra.* Here, the defendant was directly identified by eyewitnesses at the scene of the crimes. The prosecution here did not rely, as in the cases cited by the defendant, solely on allegedly guilty associations. In the circumstances of this case, any showing of a later association with Mulkern could properly serve to bolster the evidence as to the defendant's direct participation at or near the scene of the crimes.

2. There likewise was no error in the denial by the trial judge of the defendant's motions for new trials as to both complaints. At the hearing on the motions there was evidence that the defendant, after the verdicts, told his lawyer that one O'Donnell had committed the crimes. It was also shown that O'Donnell subsequently admitted his

guilt to a witness on two occasions and in front of two assistant district attorneys. The defendant apparently relies on the principle that the statements of O'Donnell were newly discovered after the trial and would, if presented at the trial, have had a strong tendency to influence the jury's verdicts.

The judge, in his discretion, properly denied the motions. First of all, there was evidence at the hearing on the motion for a new trial from which the judge was warranted in concluding that the defendant's knowledge of O'Donnell's admissions was not newly discovered by the defendant after the jury verdicts. On the contrary, there was evidence at this hearing that the defendant had known of O'Donnell's admissions even before the defendant's trial, and that the defendant had withheld that information from his own attorney. It thus appears that the defendant, for tactical or other reasons, decided not to disclose these facts at his trial. Finally, the judge held an evidentiary hearing from which it is clear that his denials of the motions were within the sound exercise of his discretion, and did not result in manifest injustice. See *Commonwealth v. De Christoforo*, 360 Mass. 531, 542-543 (1971). In particular, the statements of O'Donnell could be found by the judge to be suspect as to credibility, in that O'Donnell's description of events differed in some substantial details from the statements of the eyewitnesses.

*Exceptions overruled.*