COMMONWEALTH *vs*. STEPHEN KUYAMJIAN.

Middlesex.    September 19, 1984. — October 24, 1984.

Present: DREBEN, KAPLAN, & FINE, JJ.

*Assault and Battery on Certain Public Officers and Employees.*

At the trial of a complaint charging assault and battery on a deputy sheriff in
the performance of his duty, arising from a struggle between the defend-
ant, a dentist, and a deputy sheriff who was attempting to serve a
summons on the defendant in the defendant's dental clinic, there was
sufficient evidence to warrant denial of the defendant's motion for a
required finding of not guilty. [682-683]

At the trial of a defendant charged with committing an assault and battery on
a deputy sheriff who was attempting to serve a summons on the defendant
in a private area of the defendant's dental clinic, the judge did not err
in his instructions to the jury by referring to *Malcom* v. *Spoor,* 12 Met.
279 (1847), and the right of a constable executing a writ of attachment
to enter private property. [683]

COMPLAINT received and sworn to in the Second Eastern
Middlesex Division of the District Court Department on March
25, 1982.

Upon appeal to the jury session of the First Southern
Middlesex Division, the case was tried before *Greenberg,* J.

*William Bolton* for the defendant.

*Susan Carnduff,* Assistant District Attorney, for the Com-
monwealth.

KAPLAN, J. Convicted at a bench trial in the District Court
of an assault and battery on a deputy sheriff in the performance [1]
of his duty (G. L. c. 265, § 13D, as appearing in St. 1975,
c. 680 [2]), the defendant Kuyamjian appealed to a jury-of-six

---

[1] While the statute speaks of "the performance of his duty," the complaint
herein read "lawful charge [*sic*] of his duties." We think nothing turns on
the apparently inadvertent variation.

[2] "Whoever commits an assault and battery upon . . . a deputy sheriff
. . . engaged in the performance of his duty, shall be punished by imprison-

session, where again he was convicted and fined $500, with a surfine of $125.

On the defendant's appeal from the judgment, we have to consider, first, whether the judge erred in denying a motion for a required finding of not guilty at the close of the Commonwealth's case. The evidence then stood as follows.

On Friday, March 5, 1982, the complaining witness, Daniel Moore, a Middlesex deputy sheriff, called at the defendant's dental clinic at Watertown Mall and told the receptionist, Kristan Bradley, that he had a summons to serve on the defendant in an action against him by the Boston Globe. Bradley recognized Moore as the officer who had called the day before. Bradley walked across the reception area, passed through a glass-paneled door, and returned to tell Moore that the doctor — the defendant — did not wish to see him. Moore remonstrated that he had been told on Thursday that the defendant was busy with a patient, that he should return the next day, and here he was. Bradley again passed through the door and came back with the same message, adding that Moore should deliver the papers to the defendant's home. Moore said he would be glad to do so; what was the address? Bradley repeated her journey and said the defendant did not want Moore to have the address. Moore said this was ridiculous; he had to make the service; where was the defendant? With a patient, said Bradley. Moore insisted that she go in with him to see the defendant, assuring her that he would not disturb the defendant's work with a patient.

At this point, Bradley and Moore walked to the door; Bradley opened it, and both entered a corridor with rooms leading off, evidently the working part of the clinic. As the two were still talking, and Bradley was putting her hand to the doorknob of one of the rooms, the defendant rushed out of the room (actually a laboratory, not a treatment room) and, saying something about "trespass," assailed Moore, causing minor abrasions of his chest, and shoved him out of the corridor, through the pan-

ment for not less than ninety days, nor more than two and one half years in a house of correction, or by a fine of not less than five hundred dollars nor more than five thousand dollars."

eled door, and back into the reception area. (We need not here recount later events.)

On a view of the evidence most favorable to the Commonwealth — the approach to be taken on the defendant's motion, see *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979) — a rational jury could properly find that Moore, let into the corridor by Bradley, was blameless, and the defendant an unjustified aggressor and thus guilty beyond a reasonable doubt. Hence the motion was properly denied. True, the evidence could be so read as to stir some questions. Having reason to know that the defendant did not wish to see him, Moore nevertheless approached him at his work: should Moore then be thought of as an intruder, who might be met with reasonable force? But would it be reasonable for the defendant to attack Moore without having first asked him to leave? The recital of these questions, however, which come up quite naturally in cases of assault and battery,[3] shows at most that there were possible issues which a jury might consider.

The defense seems to argue on appeal that if Moore was an intruder, he would by that token lose his status as an officer, and the defendant could be convicted of no more than ordinary assault and battery (G. L. c. 265, § 13A) even if he was using unreasonable force. And so, the argument goes, the defendant was entitled to a required finding on the charge under G. L. c. 265, § 13D. It is a sufficient answer to say that the argument depends on a gratuitous assumption that the jury found Moore to be an intruder. The defense dresses up its argument by referring to old cases illustrating the tort doctrine of trespass ab initio, where on particular facts officials exceeding their authority were conceived to be trespassers from the beginning.

---

[3] As to questions, arising on both the civil and criminal sides, about when entrance on private property becomes illicit, and what may then be done lawfully to oust the intruder, see generally Restatement (Second) of Torts § 77 (1964); A.L.I., Model Penal Code § 3.06 (Proposed Official Draft 1962). The question whether an intruder must be asked to leave before application of force can be justified is dealt with at § 77(c) and § 3.06(3)(a) in the respective texts.

See *Malcom* v. *Spoor,* 12 Met. 279 (1847).[4] Whatever the standing of the doctrine today,[5] it is irrelevant to the present case because, as we have said, the predicate of a finding of wrongdoing by Moore is missing. We may add that on no view of the evidence could Moore be seen to be on a detour unconnected with his duties as an officer, and to hold in the circumstances that he must be dealt with as shorn of his office would defeat the manifest design of § 13D to deal specially with the subject of assaults on any of the public officers or employees mentioned in the statute.[6]

The second claim of error is based on the fact that the judge in the course of his instructions to the jury referred to the case of *Malcom* v. *Spoor,* above mentioned. That was an action of trespass for breaking and entering the plaintiff's house, with the defendant Spoor justifying as a constable executing a writ of attachment of the plaintiff's household goods. Judgment went for the plaintiff. There is argument, as we understand it, that discussion of Spoor's "possessory" attachment, where there was an initial privilege to enter Malcom's house, might have misled the instant jury into thinking that Moore was generally privileged to enter property, however private, in order to make personal service of civil process. But the judge made it plain to the jury that the facts of the old case were different from those in evidence.[7]

The defendant points to other alleged defects in the judge's instructions to which, however, no objection, or clear objec-

---

[4] The curious may wish to read, in addition, *Oystead* v. *Shed,* 13 Mass. 520 (1816); *Ilsley* v. *Nichols,* 12 Pick. 270 (1831); *Blatt* v. *McBarron,* 161 Mass. 21 (1894).

[5] See the attack on the doctrine in Restatement (Second) of Torts § 136 & comment b (1964). Compare *Commonwealth* v. *Moreira,* 388 Mass. 596, 598-602 (1983), which qualifies the old rule about the privilege of resistance to unlawful arrest.

[6] The Commonwealth's case had not "deteriorated" to the point of calling for a required finding after the defendant had put in his case, see *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976); in fact the defendant did not move for a finding at that stage.

[7] Insofar as the reference to the *Malcom* case introduced the idea of a trespass ab initio, the defendant was helped rather than hurt.

tion, was taken. Considered at their lowest, on no account did they create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Sheline,* 391 Mass. 279, 291-292 (1984).

*Judgment affirmed.*