## Commonwealth *vs.* Raysean L. Platt.

Plymouth. October 8, 2003. - November 18, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Required finding. *Evidence,* Consciousness of guilt. *Motor Vehicle,* Operation, Leaving scene of accident, Theft.

Evidence at the trial of a criminal complaint was sufficient for a reasonable fact finder to conclude beyond a reasonable doubt that the defendant left the scene of an accident involving property damage and made a false report of a motor vehicle theft, where the Commonwealth produced evidence that the vehicle had been operated by the defendant immediately prior to the accident, that the defendant had fresh cuts and abrasions consistent with having been in an accident, and that the defendant waited approximately five and one-half hours to report the alleged theft of the motor vehicle to the police and then gave two totally conflicting accounts of the circumstances of the alleged theft [400-403]; moreover, the defendant was not entitled to required findings of not guilty at the close of the evidence on the ground that the Commonwealth's case deteriorated between the time the Commonwealth rested and the close of all the evidence [403-404].

Complaint received and sworn to in the Brockton Division of the District Court Department on July 3, 2000.

The case was tried before *Richard D. Savignano*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Karen O'Sullivan*, Assistant District Attorney, for the Commonwealth.

*William W. Adams* for the defendant.

Ireland, J. A District Court jury convicted the defendant, Raysean L. Platt, of leaving the scene of an accident involving property damage (G. L. c. 90, § 24 [2]), and of making a false report of a motor vehicle theft (G. L. c. 268, § 39). The defendant appealed from his convictions, claiming that (1) the trial judge erred in denying his motion for required findings of not guilty after the Commonwealth had rested; and (2)

notwithstanding his failure to renew the motion, the convictions should be reversed because the Commonwealth's case had deteriorated between the time it rested and the conclusion of all the evidence.[1] The Appeals Court reversed the convictions on the first ground and did not reach the second. *Commonwealth* v. *Platt*, 57 Mass. App. Ct. 264, 264 (2003). We granted the Commonwealth's application for further appellate review. Because we conclude that the evidence, viewed in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), was sufficient for the jury to find the defendant guilty beyond a reasonable doubt, and that the Commonwealth's case had not deteriorated between the time the Commonwealth rested and the close of all the evidence, we affirm the judgments of the District Court.

*Facts.* We summarize the facts as the jury could have found them, in the light most favorable to the Commonwealth. *Commonwealth* v. *Sanna*, 424 Mass. 92, 93 (1997). *Commonwealth* v. *Merola*, 405 Mass. 529, 530 (1989). On June 21, 2000, at about 12:15 A.M., Pedro Pose, who resided at 187 Battles Street in Brockton, was roused from his sleep by his neighbors. He went outside and saw a vehicle on his front lawn "with the wheels up in the air" and considerable damage to his property. Pose did not see anyone except the neighbors and the police in or around the overturned vehicle.

At approximately 12:30 A.M., Officer William Healy of the Brockton police department arrived at the scene. On the front lawn of 187 Battles Street, the officer discovered a brown Ford Focus automobile with extensive front-end damage and a broken windshield. The officer also noticed serious damage to the lawn and the fence, a destroyed guardrail, and sidewalk damage in front of 187 Battles Street. The officer did not find any skid marks in the street, only on Pose's lawn.[2]

---

[1] At oral argument, the defendant conceded that the Commonwealth's case had not deteriorated between the time the Commonwealth rested and the close of all evidence, because in the second part of the trial everything turned on the credibility of the defendant's witnesses. Nevertheless, we address this issue later in the opinion.

[2] It is undisputed that the defendant's vehicle caused the accident. The issue

At about 6 A.M. on June 21, in response to a report of a stolen motor vehicle, Officer Healy went to the defendant's home at 21 Pleasantview Avenue. He found the defendant waiting for him outside. The officer noticed a small cut under the defendant's right cheekbone that looked "fairly recent," and an abrasion on the defendant's left elbow that appeared "fresh in nature."

The defendant told Officer Healy that his car had been stolen. The officer testified that the defendant appeared "extremely nervous," and his voice trembled and was barely audible. While speaking to the officer, the defendant looked down at the ground. When Officer Healy asked the defendant about the circumstances of the alleged theft, the defendant walked into the house and came back with his insurance policy. The defendant handed the policy to the officer, speaking inaudibly and in a way that did not make "much sense." Officer Healy told the defendant that he would return at another time to complete a stolen motor vehicle report.

The following day, Officer Healy returned to 21 Pleasantview Avenue at approximately 6 A.M. with a standard stolen motor vehicle report form. The defendant told the officer that his car was stolen at about 12:15 A.M. on June 21, 2000, while he was at a store on Centre Street in Brockton, the name of which he did not know. The defendant said that he left the engine running and the doors unlocked and, when he came out of the store, the car was gone. When asked why he waited five and one-half hours to report the theft to the police, the defendant gave no explanation.

Officer Healy then filled out the stolen motor vehicle report form that contained a conspicuous warning that false statements are punishable under the pains and penalties of perjury. The officer read the warning to the defendant and asked whether he understood what it meant. After the defendant indicated that he understood the warning, the officer handed the form to the defendant, asking him to read the warning. The defendant read

on appeal is whether the Commonwealth presented sufficient evidence that the defendant had been operating the vehicle at the time of the accident.

the warning and signed the document in the officer's presence.[3]

On June 28, 2000, Robert Meyer, an investigator from the defendant's motor vehicle insurance company, interviewed the defendant at his house regarding an insurance claim the defendant had made based on the alleged theft and subsequent damage to the vehicle. The defendant told Meyer that on June 21, 2000, after midnight, the defendant and his girl friend had gone to a Shaw's supermarket for soda and light bulbs. They argued and, at a traffic light on Centre Street, the defendant's girl friend got out of the car. The defendant pulled over to the side of the street, shut off the car, left the keys in the ignition, and ran after her. When they later returned to the spot where the defendant had left the car, it was gone. The defendant assumed that the car was taken "as a joke"; he and his girl friend walked home. When asked why he waited until 6 A.M. to notify the police, the defendant explained that he "was having trouble with his telephone."

After the close of the Commonwealth's evidence, the defendant moved for required findings of not guilty; the judge denied the motion. The defendant then called two witnesses: his brother and coworker, Lemar Morello, and his girl friend, Eunice Rodrigues. Both witnesses presented evidence which was of an alibi nature.[4] The defendant did not renew his motion for a required finding of not guilty at the close of all the evidence.

---

[3]After the defendant signed the form, Officer Healy told the defendant that he would be cited for leaving the scene of an accident, speeding, and failing to stop at a stop sign.

[4]Morello and Rodrigues stated that they were at the defendant's house at the time in question. Morello said that around midnight or 12:30 A.M., the defendant and Rodrigues drove to a store to get light bulbs and returned approximately one hour later on foot. They appeared angry. There were no fresh cuts on the defendant's face and no cuts that appeared to be healing. Morello testified that "something was wrong with the phone." He did admit that at no time did he or the defendant go out looking for the car or try to find a telephone in any nearby store.

Rodrigues's direct testimony corroborated the defendant's account in every respect. On cross-examination, she conceded that neither she nor the defendant went into an open convenience store to ask for help in notifying the police. They did not go to the nearby Brockton police station or look for a working public telephone. She also testified that when she returned home, she went to her room and stayed there until morning. She did not know whether anyone

*Discussion.*

1. *Denial of motion for required findings of not guilty.* The defendant argues that the judge erred in denying his motion for required findings of not guilty after the Commonwealth had rested, because no trier of fact could have rationally concluded that the defendant was driving his automobile at the time of the accident.[5] We disagree. The defendant's contention essentially concerns the weight and credibility of the evidence, "a matter wholly within the province of the jury." *Commonwealth* v. *Martino,* 412 Mass. 267, 272 (1992).

a. *The standard of review.* The only issue raised by a motion for a required finding of not guilty is whether the Commonwealth presented sufficient evidence of the defendant's guilt to submit the case to the jury. *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976), and cases cited. In reviewing the denial of the motion, we consider the evidence, together with permissible inferences from that evidence, in the light most favorable to the Commonwealth and "determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis supplied). *Commonwealth* v. *Cordle,* 412 Mass. 172, 175 (1992). See *Commonwealth* v. *Grandison,* 433 Mass. 135, 140-141 (2001); *Commonwealth* v. *Lodge,* 431 Mass. 461, 465 (2000); *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). To make this determination, we look only to the evidence presented by the Commonwealth, and disregard any contrary evidence

had made any telephone calls that night, but noted that the telephone would sometimes malfunction, a fault she attributed to the instrument itself, and not to the telephone service. Rodrigues stated that she did hear the defendant and his brother wrestling. She had not noticed any cuts or scrapes on the defendant that night, but in the morning she saw a cut on his face.

[5]To prove the charge of leaving the scene of an accident, the Commonwealth must prove beyond a reasonable doubt that (1) the defendant operated a motor vehicle (2) on a public way (3) and collided with or caused injury in some other way to another vehicle or to property; (4) the defendant knew that he had collided with or caused injury in some other way to that other vehicle or property; and (5) after such collision or injury, the defendant did not stop and make known his name, address, and the registration number of his motor vehicle. G. L. c. 90, § 24 (2) (*a*). Because we decide that there was sufficient evidence for the jury to find the defendant guilty of leaving the scene of an accident, it follows that the defendant falsely filed a stolen motor vehicle report.

presented by the defendant. *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 (1992). *Commonwealth* v. *Kelley, supra.* Furthermore, in evaluating the sufficiency of the evidence, we resolve all issues of credibility in favor of the Commonwealth. *Commonwealth* v. *James*, 424 Mass. 770, 785 (1997).

A conviction may be based on circumstantial evidence alone, as long as that evidence is sufficient to find the defendant guilty beyond a reasonable doubt. *Commonwealth* v. *Dostie*, 425 Mass. 372, 375 (1997). P.J. Liacos, M.S. Brodin, & M. Avery, Massachusetts Evidence § 4.2, at 115 (7th ed. 1999) ("circumstantial evidence . . . although 'indirect,' can carry persuasive value equal to or even greater than that of direct proof"). The proper inquiry is "whether the evidence would *permit* a jury to find guilt, not whether the evidence *requires* such a finding" (emphasis supplied). *Commonwealth* v. *Lydon, supra,* quoting *Commonwealth* v. *Brown*, 401 Mass. 745, 747 (1988). The Commonwealth need not "exclude every reasonable hypothesis of innocence" to prove its case, if the record viewed in its entirety supports "a conclusion of guilt beyond a reasonable doubt."[6] *Commonwealth* v. *Merola*, 405 Mass. 529, 533-534 (1989), quoting *United States* v. *Systems Architects, Inc.*, 757 F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985). If the evidence lends itself to several conflicting interpretations, it is the province of the jury to resolve the discrepancy and "determine where the truth lies." *Commonwealth* v. *Lydon, supra,* quoting *Commonwealth* v. *Martino, supra.*

b. *Sufficiency of the evidence.* To support a conviction on the charge of knowingly leaving the scene of an accident involving property damage, the Commonwealth must present legally sufficient evidence for a reasonable fact finder to conclude the defendant operated the motor vehicle at the time of the accident resulting in property damage. Here, both the defendant and Rodrigues admitted that the defendant was driving the car at midnight or shortly thereafter. The Commonwealth thus produced evidence that the vehicle had been operated by the

---

[6]The Commonwealth is not required to prove that no one but the defendant could have committed the crime. *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989). However, surmise, guesswork, or conjecture alone will not support a conviction. *Id.*

defendant immediately prior to the accident. See *Commonwealth v. Rand,* 363 Mass. 554, 562 (1973).

The jury also heard testimony that the defendant had fresh cuts and abrasions consistent with having been in an accident. The defendant argues that this evidence does not assist the Commonwealth, because a driver involved in such a serious car crash would have been so badly injured that he or she would have been unable to walk away from the crash site without assistance. However, Pedro Pose testified that, when he went outside after the accident, he did not see anyone except the neighbors and the police around the vehicle. Therefore, despite the extensive damage to the vehicle itself, the driver had in fact been well enough promptly to leave the scene of the accident immediately after the crash.

The Commonwealth also produced evidence that the defendant waited approximately five and one-half hours to report the alleged car theft to the police and then gave two totally conflicting accounts of the circumstances of the alleged theft.[7] The defendant could not explain to the investigating officer why he waited so long to report the theft of his vehicle, but several days later he told the insurance investigator that he did not report the alleged theft because his telephone was not working. There was testimony that during his first conversation with Officer Healy on June 21, 2000, the defendant appeared evasive and extremely nervous, he rarely looked at the officer, and his voice trembled and was barely audible. The jury could have reasonably interpreted the defendant's equivocal and conflicting accounts of the alleged theft as attempts to mislead the police and escape responsibility. *Commonwealth* v. *Doyle,* 12 Mass. App. Ct. 786, 789 (1981) (defendant's conflicting and evasive statements constitute one factor in establishing guilt). The jury

[7] The first account, in which the defendant claimed that he had left the car running while he went into a store, made no mention of anyone being with him. The second account, given after the defendant had been warned he would be cited, added the girl friend to the scenario, thereby creating a previously unmentioned alibi, and claiming that he had left the vehicle unattended to pursue her. Under either scenario, the defendant allegedly discovered the theft of the vehicle within minutes of its occurrence, which would, if true, motivate a victim to report the theft immediately in the hope that prompt police action could apprehend the thief before he or she got very far.

could have disbelieved his allegation that the car had been stolen and found that the false report of theft demonstrated the defendant's consciousness of guilt. *Id. Commonwealth* v. *Geisler*, 14 Mass. App. Ct. 268, 274 (1982). *Commonwealth* v. *Smith*, 368 Mass. 126, 127-129 (1975) (fact finder does not have to credit defendant's version of events). *Commonwealth* v. *Swartz*, 343 Mass. 709, 712, 713 (1962) (jury could disbelieve defendant's alibi; evidence of consciousness of guilt, together with other evidence, may suffice to prove guilt). The jury could have also found that the defendant's behavior was not reasonably consistent with having been the victim of a theft. *Id.* at 712-713.

Taking this evidence in the light most favorable to the Commonwealth, it was both reasonable and possible for the jury to infer that the defendant operated his motor vehicle at the time of the accident and to find the defendant guilty beyond a reasonable doubt. *Commonwealth* v. *Swartz, supra* at 713 (inference of defendant's guilt from all circumstances, "while not compelling, was at least permissible"). *Commonwealth* v. *Henry*, 338 Mass. 786 (1958) (inference from entire evidence warranted jury's finding that defendant operated vehicle at time of accident). Accordingly, we conclude that the judge did not err in denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case.[8]

2. *Deterioration of the Commonwealth's case.* In his brief, the defendant contended that between the time the Commonwealth rested and the close of all the evidence, the Commonwealth's case deteriorated — so weakened that the defendant was entitled to required findings of not guilty at the

---

[8]The defendant's reliance on the principle that evidence equally probative of guilt and innocence is insufficient to establish guilt is misplaced. This principle is of no help to the defendant, because it only applies in cases where "any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged" to support a conviction. *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 426 (1998). In the present case, there is no such "evidentiary gap, merely a question of the weight of a continuous chain of circumstantial evidence strongly connecting the defendant directly to the [crime]." *Id.*

close of all the evidence.[9] As we mentioned above, see note 1, *supra*, at oral argument, the defendant conceded that the Commonwealth's case had not deteriorated, which upon our review was appropriate. Because the credibility of the defendant's witnesses and the weight of their testimony are issues for the jury to decide, the Commonwealth's case could not have deteriorated where the defendant's evidence at trial turned solely on the credibility of his witnesses. *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992). *Commonwealth* v. *Elliffe*, 47 Mass. App. Ct. 580, 584 (1999).

*Conclusion.* Based on the record in this case, at the time the Commonwealth rested, it had presented legally sufficient evidence to support a finding beyond a reasonable doubt that the defendant was operating his motor vehicle at the time of the accident. Furthermore, the Commonwealth's case did not deteriorate between the time it rested and the close of all the evidence.

*Judgments affirmed.*

---

[9]Had the Commonwealth's case deteriorated between the close of its evidence and the close of all the evidence, the defendant's motion for required findings of not guilty, if renewed at the close of all the evidence, would be reconsidered taking into account all the evidence. *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 n.1 (1976).