NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-103

COMMONWEALTH

vs.

HECTOR JIMINEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a Superior Court jury trial, the defendant was convicted of armed robbery while masked (second or subsequent offense) and larceny over $250. He appeals, arguing that (1) the evidence was insufficient to prove his identity as the perpetrator of the crimes, (2) the lead investigator improperly opined on his guilt during trial, (3) the judge erred in denying his motions in limine to exclude surveillance video recordings and to suppress his statements, and (4) the judge erred in denying his motion for new trial premised on ineffective assistance of counsel and the Commonwealth's failure to disclose exculpatory evidence. Discerning no error or abuse of discretion, we affirm.

Discussion. 1. Identity of perpetrator. The defendant contends that the judge erred in denying his motion for required

finding of not guilty because the evidence failed to establish his identity as the perpetrator of the crimes.  In reviewing the denial of a motion for a required finding of not guilty, we consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Commonwealth v. Scott, 464 Mass. 355, 360 (2013).  An essential element to be proven in any case is the identity of the defendant as the perpetrator of the crimes charged.  See Commonwealth v. Farley, 443 Mass. 740, 745-746, cert. denied, 546 U.S. 1035 (2005).  Proof of identity may be established in a number of ways including through circumstantial evidence.  See Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019). The jury is entitled to draw reasonable inferences from the evidence.  See Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010).  Where conflicting inferences are possible, it is for the jury to determine where the truth lies because the weight and credibility of the evidence is wholly within the province of the jury.  See Commonwealth v. Platt, 440 Mass. 396, 401 (2003).

Examining the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), the jury could have found the following facts.  On May 26, 2015, at approximately 10:30 P.M., the victim entered a Bank of America ATM vestibule in the stairway plaza at

2

Chelmsford Street, Lowell in order to deposit money. The victim was beginning a transaction when a man holding a knife entered the ATM area and said, "give me your money or I'll stab you." The robber was wearing a gray hooded sweatshirt with black piping along the zipper, cuffs, and pockets, and a pair of blue and black checkered pajama pants. The victim cancelled the transaction and handed her money to the robber. During the exchange, the victim's phone fell on the ground and the robber grabbed it. The victim asked for her phone but the robber said he couldn't give it back because it had his fingerprints on it. The victim followed the robber as he left the vestibule and asked for her phone again. The robber wiped the phone with his sweatshirt, tossed it back to the victim, and left on bicycle.

The victim called the police and reported the crime. The police then reviewed surveillance video recordings of the robbery itself and were able to observe the clothing worn by the robber, as well as to determine that he left on bicycle. Other surveillance video recordings from the surrounding area of the robbery, around the time frame of the robbery, showed a person dressed consistently with the robber, riding a black and white bicycle to the ATM just prior to the robbery, and riding the bicycle to the back of an adjacent apartment complex at Chelmsford Street, after the robbery. Three days later, on the evening of May 29, 2015, in the area of the ATM robbery, the

3

police spotted the defendant riding a black and white bicycle consistent with the bicycle the robber had been riding. That night, the police found, in the defendant's mother's apartment located at Chelmsford Street, clothing consistent with that the robber had been wearing. Specifically, the police found a gray hooded sweatshirt with black piping along the zipper, cuffs, and pockets under a bed, and a pair of blue and black checkered pajama pants in a hamper. The evidence thus amply supported the defendant's identification as the perpetrator.

The defendant contends nevertheless that the victim's description of the robber, given during her 911 call to the police immediately after the incident, eliminated the defendant as a suspect because it was at odds with the defendant's actual appearance. He reasons that the victim's account of the robbery is supported by video recordings, such that her description of the robber should be credited. He further argues that the jury should have drawn negative inferences from certain missing surveillance video recordings and that time stamps on the video recordings indicate that the defendant could not have committed the crime. Finally, he argues that the lack of forensic evidence precludes a finding connecting the defendant to the bicycle and the clothing seized.

The defendant's arguments are all premised on a view of the evidence that favors him. When properly considered with all

4

reasonable inferences in favor of the Commonwealth, the evidence soundly supports the defendant's connection to the bicycle and the clothing, and those items are likewise soundly connected to the robbery. Notwithstanding any discrepancies between the victim's description of the robber and the defendant's actual appearance, the jury had before it video recordings of the crime in progress. The jurors could judge the opportunity the victim had to observe the robber. Additionally, the jurors had the ability to view the robber, as well as the bicycle and clothing, on video recordings and to make a comparison with the defendant and the physical evidence submitted at trial. See Platt, 440 Mass. at 401 (resolution of conflicting evidence is for jurors, who are entitled to draw reasonable inferences from evidence).

Viewing the evidence in the light most favorable to the Commonwealth, and all permissible inferences drawn therefrom, and considering "that the 'weight and credibility of the evidence is the province of the jury,'" Commonwealth v. Sylvia, 456 Mass. 182, 191 (2010), quoting Commonwealth v. Gomez, 450 Mass. 704, 711 (2008), there was sufficient evidence presented to identify the defendant as the perpetrator.

2. Investigator opinion on guilt. On cross-examination of the lead investigator, defense counsel asked whether the clothing seized at the defendant's mother's apartment had ever been submitted for any kind of forensic testing. The

5

investigator stated that it had not, that it would not have been, and questioned what kind of testing defense counsel meant. The following exchange took place:

"Q.  You didn't test for any sort of DNA, you didn't try to draw any hair fibers to try to link later comparison to?

"A.  No, I knew who was wearing them, we didn't have to submit them."

There was no objection or motion to strike, and defense counsel moved to another topic, the investigator's failure to obtain additional video footage.

To the extent that the testimony constitutes an opinion on the defendant's guilt, see Commonwealth v. Hamilton, 459 Mass. 422, 439 (2011) ("No witness, including a police witness, may testify as to a defendant's guilt or innocence"), we conclude that there was no substantial risk of a miscarriage of justice. The defendant's trial strategy was to show that the police did a poor investigation leading to the defendant's wrongful arrest, as highlighted by the discrepancy between the victim's description of the robber and the defendant's actual appearance.[1] The testimony of the investigator supported the defense theory,

---

[1] In opening, defense counsel mentioned the victim's description of the defendant during her 911 call and then stated:  "Three days later the investigation that began with [the victim's] 911 call ended with [the defendant] being charged."  Defense counsel further stated:  "I submit to you that you will hear about an investigation that is careless, unprofessional, cynical."

and was used as the centerpiece of closing argument.[2]  Given the video evidence and the jury's ability to make its own comparison with the physical evidence, and the fact that the testimony supported the defendant's theory of the case, we discern no substantial risk of a miscarriage of justice from the investigator's testimony.  See Commonwealth v. Brum, 492 Mass. 581, 600 (2023) (although officer's testimony lacked proper foundation, no risk of miscarriage of justice where jury "had before them several pieces of evidence that were probative of a comparison between the defendant's" vehicle "and the SUV in the surveillance video footage").  See also Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 693 (2015) (factors to be considered in substantial risk of miscarriage of justice review).

3.  Denial of motions in limine.  The defendant contends that the trial judge erred in denying two motions in limine, one to exclude the defendant's statement at arrest and one to exclude a surveillance video recording from his mother's apartment complex.

a.  Statement.  The defendant had moved to suppress the fruits of an allegedly illegal arrest.  However, after an

---

[2] "When I [defense counsel] spoke to you [in opening statement] I told you that you would hear about an investigation that was unprofessional, careless and cynical.  Never were those three things so clearly illustrated than yesterday, during the testimony of [the lead investigator]."

evidentiary hearing, the motion judge ruled that the arrest was not illegal and therefore nothing was suppressed. During the hearing, however, the lead investigator testified that, at the time of his arrest, the defendant made certain statements including "I saw you." At the time of trial, the defendant moved in limine to exclude these statements. Certain statements were excluded on the basis that they were obtained without Miranda warnings during custodial interrogation. As to the "I saw you" comment, however, the defendant argued that the statement should be excluded as "speculative," "incomplete," and "not relevant or probative." The motion judge determined that the statement was relevant to identity and allowed the statement to be admitted.

On appeal, the defendant argues that the statement should have been excluded as a discovery violation and as a violation of his Fifth Amendment right against self-incrimination. Where the motion judge was not asked to make a determination regarding a discovery violation or whether the "I saw you" statement was the result of custodial interrogation, we will not do so for the first time on appeal.[3] See Commonwealth v. Yat Fung Ng, 491

_____

[3] Both claims require resolution of factual issues after notice to the Commonwealth, so that it can seek to meet its burden. See Commonwealth v. Santos, 95 Mass. App. Ct. 791, 797-798 (2019) (court declined to reach suppression issue for first time on appeal where issue depended on facts not developed in the record below).

Mass. 247, 261 n.16 (2023), quoting Commonwealth v. Flynn, 362 Mass. 455, 472 (1972) (defendant "is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to [an appellate] court on a different ground").

b. Video recordings. The Commonwealth provided the defendant with surveillance video recordings it had obtained, including video recordings from the defendant's mother's apartment complex which captured a cyclist in the parking lot just prior to the nearby robbery. In his motion in limine, the defendant argued that the video recordings should be excluded because the Commonwealth did not obtain video recordings from the days prior to or following the robbery and that such failure amounted to the loss of exculpatory evidence.

On appeal, the defendant contends that the judge erred in denying the motion because additional video recordings could have aided his defense, if those recordings did not capture the defendant coming and going from the apartment complex. Certainly, the Commonwealth may not destroy, fail to preserve, or fail to disclose exculpatory information within its possession. See Graham v. District Attorney for the Hampden Dist., 493 Mass. 348, 361 (2024), quoting Committee for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 731 (2018) ("The due process clauses of the Federal Constitution and the

9

Massachusetts Declaration of Rights require that the Commonwealth disclose to a defendant material, exculpatory evidence in its possession or control [emphasis added]").  But here, the Commonwealth never had any additional video recordings from the defendant's mother's apartment complex in its possession, custody, or control.

Although the Commonwealth could have requested additional video recordings during its investigation, the "prosecutorial duty to disclose to the defense evidence in the prosecution's possession that is both material to the defendant's guilt or innocence and exculpatory" does not extend "beyond the disclosure of evidence already in existence and in the prosecution's control, to the gathering of evidence potentially helpful to the defense."  Commonwealth v. Neal, 392 Mass. 1, 7-8 (1984).  See Commonwealth v. Sasville, 35 Mass. App. Ct. 15, 19-20 nn.3, 4 (1993).  Moreover, the very claim that additional video recordings would have been exculpatory, rather than inculpatory, was entirely speculative.  See Commonwealth v. Maimoni, 41 Mass. App. Ct. 321, 330 (1996) (reasonable possibility must be based on concrete evidence, not fertile imagination).  There was no error.

4.  Motion for new trial.  The defendant claims that the judge erred in denying his motion for new trial, which was based on ineffective assistance of counsel and the prosecution's late

10

disclosure of a surveillance video recording.  A trial judge may allow a motion for new trial only "if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  "A judge's decision to deny a motion for a new trial . . . will not be disturbed unless a review of the defendant's case shows that the decision, if not reversed, will result in 'manifest injustice.'"  Commonwealth v. Watson, 409 Mass. 110, 114 (1991), quoting Fogarty v. Commonwealth, 406 Mass. 103, 110 (1989).  "Where, as here, the motion judge was also the trial judge, the decision of the motion judge is entitled to special deference."  Commonwealth v. Barnette, 45 Mass. App. Ct. 486, 493 (1998).

a.  Ineffective assistance.  In his motion, the defendant claimed that he received ineffective assistance because his trial counsel failed to properly investigate and challenge the Commonwealth's video evidence.  To establish a claim of ineffective assistance of counsel, a defendant must show both that trial counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer," and that prejudice resulted from the inadequacy.  See Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

Here, the defendant claimed that, if his trial counsel had focused the jury's attention on the time stamps, she could have argued that the Commonwealth's theory of the robbery was

11

impossible and therefore he could not have been the robber.  The defendant argued that the video recording purporting to show the defendant returning to his mother's apartment complex after the robbery has a time stamp indicating that it took place minutes before the robbery began.  As the judge noted, the defendant's theory is premised on all of the video recordings from three separate sources being accurately time stamped and synchronized.  Additionally, the defendant's theory would have meant that there were two individuals, built and dressed similarly, riding similar bicycles in the same general area in the same general time frame -- one robbing the victim, and the other traveling to the defendant's mother's housing complex.

The judge determined that the defendant's theory was inherently implausible and therefore could have been easily "debunked" by the prosecution.  We agree that the defendant failed to establish inadequate performance on the part of trial counsel.  The judge did not abuse discretion in denying the motion for new trial on the basis of ineffective assistance of counsel.

b.  Late disclosure of video recording.  In his motion, the defendant claimed that the prosecution failed to disclose a thirty-six second video recording from camera four (labeled "file 4"), located outside of the ATM, which shows the entrance to the driveway of the defendant's mother's apartment complex.

12

The issue arose after appellate counsel entered the case and could not locate the original video recordings that had been provided in pretrial discovery.  The Commonwealth thereafter reproduced the video recordings for defense counsel; those video recordings included file 4, which the Commonwealth had not presented at trial.

The defendant bears the burden of proving facts necessary to support a claim that the Commonwealth failed to disclose potentially exculpatory evidence.  See Commonwealth v. Pope, 489 Mass. 790, 799 (2022).  Here, the defendant provided an affidavit from trial counsel which contained no statement concerning file 4.  The defendant also submitted his own affidavit in which there was no statement concerning file 4.  Appellate counsel's affidavit states that file 4 is contained within one of the video recording files reproduced by the Commonwealth but otherwise gives no indication whether file 4 was earlier provided in discovery.  By contrast, the Commonwealth submitted an affidavit of the prosecutor responsible for providing discovery in the case; he detailed the history of discovery provided by the prosecution, and averred that all video recordings collected were turned over to the defense, including specifically file 4.  Where the defendant provided no factual support for his position and the Commonwealth specifically contradicted it, there was no error in

the judge's finding that the defendant had failed to meet his burden.  The judge did not abuse discretion in denying the motion for new trial on the basis of failure to disclose potentially exculpatory evidence.

<u>Judgments affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.

By the Court (Rubin, Singh & Hershfang, JJ.[4]),

Assistant Clerk

Entered: April 9, 2024.

---

[4] The panelists are listed in order of seniority.