COMMONWEALTH *vs.* RUPERT A. WEEKS.

No. 08-P-1175.

Plymouth. October 16, 2009. - June 10, 2010.

Present: KAFKER, KATZMANN, & RUBIN, JJ.

*Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses, Argument by prosecutor, Required finding. *Evidence,* Business record, Prior conviction, Relevancy and materiality, Motive. *Firearms.*

At the trial of an indictment charging unlawful possession of a firearm, subsequent offense, the admission in evidence of certified copies of docket sheets of the defendant's prior convictions (records) did not violate his constitutional right to confront the witnesses against him, given that such records are created to establish the fact of adjudication, so as to promote accountability to the public regarding official proceedings and public knowledge of the outcomes of those proceedings; further, unlike certificates of drug analysis, such records are not prepared for an upcoming case and are not testimonial in nature; moreover, the Commonwealth did not seek to use the records to prove an evidentiary fact. [3-8]

At the trial of indictments charging, inter alia, unlawful possession of a firearm, the judge did not abuse his discretion in admitting in evidence

testimony that the defendant was a known member of a particular gang that had had a dispute with another gang, and had participated in a fight outside a party in the area of the other gang, where evidence of the defendant's gang affiliation was relevant to prove his motive for having a gun and firing it, and where the judge barred the use of the word "gang" because of undue prejudice to the defendant [9-11]; further, the judge's decision not to question prospective jurors about gang membership or give a limiting instruction about the evidence of gang affiliation did not create a substantial risk of a miscarriage of justice [11-12].

At a criminal trial, the prosecutor's opening statement and closing argument, viewed in the context of the trial as a whole, did not create a substantial risk of a miscarriage of justice. [12-14]

At the trial of indictments charging, inter alia, unlawful possession of a firearm, the evidence was sufficient to permit the jury to infer that the defendant possessed the firearm, where the defendant was found wearing the same clothing a witness had described the shooter as wearing, and hiding in an area where police found the gun in question hidden in a snowbank; likewise, the evidence was sufficient to permit the jury to conclude that the gun constituted a working firearm in the statutory sense, where the defendant was seen to have fired a gun, the gun in question was loaded when police found it and contained both empty shells and live rounds, and a ballistics expert testified that the gun would fire, despite missing a center pin. [14-16]

INDICTMENTS found and returned in the Superior Court Department on April 1, 2005.

The cases were tried before *Paul E. Troy*, J.

*Kathleen M. O'Connell* for the defendant.

*Kristin Freeman*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. The defendant, Rupert A. Weeks, was found guilty by a Superior Court jury of unlawful possession of a firearm without a licence, in violation of G. L. c. 269, § 10(*a*), and not guilty of unlawful possession of ammunition without a firearm identification card (G. L. c. 269, § 10[*h*]), and assault by means of a dangerous weapon (G. L. c. 265, § 15B[*b*]). He then waived his right to a jury trial on the charge of carrying a firearm without a license, subsequent offense. A Superior Court judge found the defendant guilty on that charge. The defendant now appeals from his conviction of possession of a firearm under G. L. c. 269, § 10(*a*), and possession of a firearm, subsequent offense, under G. L. c. 269, § 10(*d*).

The defendant contends that the judge's admission of docket sheets to prove prior convictions during the subsequent offense trial violated his confrontation rights under the Sixth Amend-

ment to the United States Constitution. He also raises various trial issues.

1. *Certified docket sheets and confrontation clause.* During the jury-waived trial on the subsequent offense charge, the Commonwealth introduced two certified copies of conviction (the certified convictions) to prove that the defendant had been convicted of unlawful possession of a firearm on two prior occasions.[1] The defendant's trial counsel objected on the grounds that introduction of the certified convictions violated his Sixth Amendment confrontation rights as recognized in *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*). The judge overruled the objection, holding that the certified convictions complied with the requirements of G. L. c. 233, § 76, and were admissible under that statute.[2] We review the judge's decision to determine if an error occurred and whether that error was "harmless beyond a reasonable doubt." *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999), quoting from *Commonwealth* v. *Miles*, 420 Mass. 67, 73 (1995). See *Commonwealth* v. *Vasquez*, 456 Mass. 350, 356 (2010).

In the aftermath of *Crawford*, this court articulated two reasons in support of our holding that docket sheets did not trigger the right of confrontation. See *Commonwealth* v. *Crapps*, 64 Mass. App. Ct. 915, 916 (2005). First, *Commonwealth* v. *Verde*, 444

---

[1] At trial, the Commonwealth also presented five police officers and one employee of the Plymouth County house of correction to testify that the defendant had been incarcerated twice before for unlawful possession of a firearm. In addition to the two certified docket sheets of prior convictions, two District Court complaints were admitted over the defendant's objections.

[2] General Laws c. 233, § 76, as amended by St. 1997, c. 164, § 282, states:

> "Copies of books, papers, documents and records in any department of the commonwealth or of any city or town, authenticated by the attestation of the officer who has charge of the same, shall be competent evidence in all cases equally with the originals thereof; provided, that, except in the case of books, papers, documents and records of the department of telecommunications and energy in matters relating to common carriers, and of the registry of motor vehicles, the genuineness of the signature of such officer shall be attested by the secretary of the commonwealth under its seal or by the clerk of such city or town, as the case may be."

We note that subsequent amendment of the statute does not change our analysis.

Mass. 279, 280 (2005), held that "a drug certificate is akin to a business record and the confrontation clause is not implicated by this type of evidence." We ruled that a docket sheet, like a drug certificate, is a business record and thus does not trigger the confrontation clause. *Commonwealth* v. *Crapps, supra.* Second, we determined that a docket sheet was not testimonial "because authors of prior conviction records are not witnesses against criminal defendants." *Id.* at 916 n.3, citing *People* v. *Shreck*, 107 P.3d 1048, 1060-1061 (Colo. Ct. App. 2004) (docket sheets are business records that are explicitly exempt from the *Crawford* standard). See *Commonwealth* v. *Maloney*, 447 Mass. 577, 591-592 (2006) (holding that G. L. c. 278, § 11A, allowing record of conviction to serve as prima facie evidence of prior conviction, did not violate confrontation clause).

In June, 2009, the United States Supreme Court overturned *Commonwealth* v. *Verde, supra*, and held that the admission of certificates of drug analysis violated a criminal defendant's Sixth Amendment confrontation rights. See *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2542 (2009) (*Melendez-Diaz*). The Supreme Court stated that testimonial hearsay includes affidavits made under "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 2531, quoting from *Crawford*, 541 U.S. at 52. The Court focused on the fact that "under Massachusetts law the *sole purpose* of the [drug certificate] affidavits was to provide 'prima facie evidence of the composition, quality, and the net weight' of the analyzed substance." *Id.* at 2532, quoting from G. L. c. 111, § 13.

The Commonwealth here argues that the certified convictions are not testimonial hearsay because they qualify as business records. In *Melendez-Diaz, supra* at 2538, the Supreme Court stated that "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status . . . . But that is not the case if the regularly conducted business activity is the production of evidence for use at trial." The Court also clarified that "public records are generally admissible absent confrontation . . . because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial." *Id.* at 2539-2540

Therefore, in order to determine whether the certified convictions are testimonial, we must ascertain whether certified records of convictions are created for the "administration of an entity's affairs" or "for the purpose of establishing or proving some fact at trial." Certified records of convictions are created to establish the fact of adjudication, so as to promote accountability to the public regarding official proceedings and public knowledge of the outcomes of those proceedings. See *Boston Herald, Inc.* v. *Sharpe*, 432 Mass. 593, 606 (2000) (criminal court records open to public under the First Amendment as a "check" on the courts). See also *Roe* v. *Attorney Gen.*, 434 Mass 418, 435 & n.26 (2001) ("[R]ecords of conviction are public records that are constitutionally required to be public"), citing *Globe Newspaper Co.* v. *Fenton*, 819 F. Supp. 89, 100-101 (D. Mass. 1993) (First Amendment right to records of convictions). They are used for a number of administrative purposes, including background checks and parole records. See G. L. c. 6, §§ 172C, 172D, 172E, 172F. Unlike drug certificates, docket sheets are not prepared for an upcoming case and are not testimonial since the authors are not witnesses against the criminal defendant.[3] See *Commonwealth* v. *Martinez-Guzman*, 76 Mass. App. Ct. 167, 171 n.3 (2010) ("Unlike the certificates at issue in *Melendez-Diaz*, which are created solely to prove an element of the prosecution's case, [Registry of Motor Vehicles] records are maintained independent of any prosecutorial purpose and are therefore admissible in evidence as ordinary business records under G. L. c. 233, § 78, as well as pursuant to G. L. c. 233, § 76"); *Commonwealth* v. *McMullin*, 76 Mass. App. Ct. 904, 904-905 (2010) (admission of court records and record of Registry of Motor Vehicles records did not violate the defendant's Sixth Amendment right of confrontation). See also *Commonwealth* v. *Bowden*, 447 Mass. 593, 599 (2006) (no difference between Registry of Motor Vehicles records and court records). Contrast *Commonwealth* v. *Nardi*, 452 Mass. 379, 393 (2008), quoting from *Commonwealth* v. *Slavski*, 245 Mass. 405,

---

[3]That statutes, see, e.g., G. L. c. 233, § 76, and rules, see, e.g., Mass.R. Crim.P. 40(a)(1), 378 Mass. 917 (1979), contemplate that certified records of conviction might be admissible at trial does not signify that such records are prepared for a prosecutorial purpose, or that they are not prepared for other purposes independent of prosecution.

417 (1923) (autopsy reports prepared by "public officers concerning *causes and effects* involving the exercise of *judgment and discretion,* expressions of opinion, and making conclusions" are inadmissible testimonial hearsay).[4]

Furthermore, the docket sheets are not testimonial under the two-part inquiry set forth in *Commonwealth* v. *Gonsalves,* 445 Mass. 1, 3 (2005), cert. denied, 548 U.S. 926 (2006). First, the docket sheets are not "testimonial per se" because they are not "made in a formal or solemnized form (such as a deposition, affidavit, confession, or prior testimony) or in response to law enforcement interrogation." See *Commonwealth* v. *Simon,* 456 Mass. 280, 297 (2010), citing *Commonwealth* v. *Gonsalves, supra* at 13. Second, the docket sheets are not "testimonial in

---

[4]Courts in other jurisdictions have recently held that documentation such as certified records of convictions are not "testimonial." See, e.g., Wesson *v.* Clark, U.S. Dist. Ct. No. C 07-1437 SI(PR) (N.D. Cal. Nov. 23, 2009) ("abstract of judgment . . . prepared on a form that objectively memorialized the unambiguous fact of conviction" and "notice that merely informed the sheriff that [defendant] had pled guilty to charged crimes . . . were [not] prepared for the purpose of aiding in a later prosecution, [thus] they are nontestimonial"); Verdin *v.* Smelosky, U.S. Dist. Ct. No. CV 08-7885 R(JC) (C.D. Cal. Feb. 7, 2010) ("public records documenting convictions are non-testimonial and are beyond the prohibition of *Crawford*" and citing *"United States* v. *Weiland,* 420 F.3d 1062, 1076-77 [9th Cir. 2005] [records of conviction are public records, are not testimonial in nature, and do not fall within prohibition established in *Crawford*] . . . [;] Van Pool *v.* Kenan, U.S. Dist. Ct. No. EDCV 07-1224-GWJTL [C.D. Cal. Jan. 22, 2010] [public records of convictions sustained by gang members offered to prove gang enhancement non-testimonial and not prohibited by *Crawford*]; Zuniga *v.* Felker, U.S. Dist. Ct. No. C 07-4319 PJH(PR) [N.D. Cal. Oct. 26, 2009] [admission of certified copies of court documents reflecting guilty pleas of gang members offered to show pattern of criminal activity for gang enhancement did not implicate Confrontation Clause because documents not made in anticipation of future litigation, but instead were records routinely made by government agency]"). See also *Grey* v. *State,* 299 S.W.3d 902, 910 (Tex. Ct. App. 2009) ("pen pack" documenting defendant's prior record nontestimonial because "objective circumstances indicate that the document was not prepared for prosecutorial use; appellant had already been convicted, and he was beginning a forty-five-year prison sentence. Instead, the social and criminal history appears on its face to have been prepared for the internal use of the department in determining appellant's proper classification and assignment"); *United States* v. *Huete-Sandoval,* 681 F. Supp. 2d 136, 139 (D.P.R. 2010) ("Defendant falls short of convincing the Court to extend the holding in [*Melendez-Diaz*] to necessarily classify as testimonial records kept by the U.S. Customs and Border Protection agency as a matter of course pursuant to their duty under law to maintain such records").

fact" because, as we have discussed above, given the purposes for which they are created, and in light of the fact that they are not created for the purpose of any pending litigation, it would not reasonably be anticipated that they would be used against an accused. Compare *Commonwealth* v. *Avila*, 454 Mass. 744, 763 n.20 (2009) (hearsay statement in expert report made for purpose of upcoming litigation is testimonial in fact) with *Commonwealth* v. *Simon*, 456 Mass. 280, 299 (2010) (hearsay statement by victim to 911 dispatcher for purpose of "resolving the present emergency and not at conducting an investigation" not testimonial in fact), quoting *Commonwealth* v. *Nesbitt*, 452 Mass. 236, 248 (2008), and *Commonwealth* v. *Linton*, 456 Mass. 534, 550 (2010) (hearsay statement by victim to father "to explain to her father what had happened" not testimonial in fact). In short, certified docket sheets of conviction are distinguishable from drug certificates and do not constitutionally require cross-examination.

Finally, the defendant points to *Kirby* v. *United States*, 174 U.S. 47 (1899), noted in *Melendez-Diaz*. There the United States Supreme Court discussed the confrontation clause question raised by the use of a record of prior conviction, as presented in *Kirby*:

> "In *Kirby* v. *United States*, 174 U.S. 47 (1899), . . . the Court considered Kirby's conviction for receiving stolen property, the evidence for which consisted, in part, of the records of conviction of three individuals who were found guilty of stealing the relevant property. *Id.* at 53. . . . Though this evidence proved only that the property was stolen, and not that Kirby received it, the Court nevertheless ruled that admission of the records violated Kirby's rights under the Confrontation Clause. *Id.* at 55."

*Melendez-Diaz*, 129 S. Ct. at 2534.

*Kirby* is distinguishable and not controlling here. In that case, the government sought to use the record of convictions of third persons to prove that the property in the defendant's case was stolen. 174 U.S. at 53. In other words, in *Kirby*, the records of conviction were introduced not to demonstrate the fact of conviction, but the underlying evidentiary fact, that the goods were

stolen. It was a violation of Kirby's confrontation rights because he was not allowed to cross-examine any witnesses with respect to that evidentiary element. *Id.* at 55-56. In the present case, the Commonwealth seeks to use records of the defendant's prior convictions to prove that he had been convicted before, not to prove an underlying evidentiary fact. See *Bisaccia* v. *Attorney Gen.*, 623 F.2d 307, 313-314 (3d Cir. 1980) (Seitz, C.J., concurring). Their admission did not violate the defendant's Sixth Amendment rights.

2. *Trial issues. Background.* On the night of January 29, 2005, the residents at 20 Tremont Street in Brockton hosted a birthday party. Six police officers conducted surveillance of the party on the basis of information they received in a telephone call that night.[5] Victoria Lassiter and three of her friends stood by the door at 20 Tremont Street to search people entering the party for alcohol or weapons.

Between 11:00 P.M. and midnight, two men arrived at the party and approached the door. Lassiter found a bottle of liquor on one of the men and told him he could not enter the party with it. After the men stood in front of the house for ten to fifteen minutes, they discarded the bottle, and Lassiter further searched them. She felt something heavy in the pocket of one of the men, and she saw the grip of a gun. This man was wearing a green camouflage army windbreaker, and Lassiter later identified the man as the defendant.

The two men stood outside the house, and other partygoers began to converge around them. The police officers conducting surveillance moved toward the crowd and saw a man on the ground being kicked. Lassiter testified that the man in the camouflage windbreaker pulled out a gun and fired it two or three times in the direction of a restaurant. The crowd dispersed chaotically in the immediate aftermath of the gunshots.

The police officers converged on the scene outside 20 Tremont Street from three different angles. With their guns drawn, the officers ordered everyone to the ground. Six of the partygoers ran toward Detectives Hilliard and Carde, including the defendant. The defendant ducked between a parked car and a

---

[5] An anonymous informant tipped off the police, but the jury only heard evidence that a telephone call had been placed to the police.

snowbank. Detective Hilliard drew his weapon and yelled for the defendant to emerge with his hands up. He recognized the defendant immediately because they had had prior interactions.[6] Detective Hilliard frisked the defendant, and he searched the area where the defendant had ducked for a weapon. After Detective Hilliard did not find any contraband, he released the defendant. Detective Hilliard decided to search the area where the defendant had been hiding more thoroughly, and he saw the butt of a gun protruding from the snowbank. The gun found in the snowbank was a .22 caliber revolver with four live bullets and four empty shells in the cylinder. Detective Hilliard radioed the other officers to detain the defendant if they spotted him. Approximately one hour after the gunshots, police officers stopped a car outside 20 Tremont Street. Four men were in the car, including the defendant, who was in the back seat on the driver's side. The driver gave the police permission to search the car. Although the officers found no guns or other contraband, they found a camouflage jacket concealed in the trunk.

On appeal, the defendant raises three trial issues, claiming error relating to gang affiliation evidence, and to the Commonwealth's opening statement and closing argument, and that the evidence was insufficient.

a. *Admission of defendant's gang affiliation.* Prior to trial, the Commonwealth moved in limine to admit evidence of the defendant's affiliation with the North Side gang known as the "Annis Ave. Soldiers." The defendant's counsel opposed the motion because of the risk of unfair prejudice to his client. In the alternative, he proposed that the judge ask prospective jurors during the voir dire a question about whether gang membership would affect their impartiality and give a limiting instruction about gang membership. The prosecutor appeared to agree to this suggestion. The judge decided that the evidence was admissible, but barred the use of the word "gang" because of undue prejudice to the defendant. He ruled that using "young men" or "group of young men" from the North Side would minimize the risk of undue prejudice. The judge did not ask a question about gang membership to prospective jurors during the voir dire. Also, he

---

[6]Detective Hilliard was familiar with the defendant because of his known affiliation with the North Side gang in Brockton.

did not issue a limiting instruction to the jurors regarding gang membership. The defendant did not object in either instance.

During the Commonwealth's opening statement, the prosecutor classified the dispute as between "[g]roups of young men that hang around together and basically have a street beef, going on for a long time. The North Siders, according to this information, were going to crash the birthday party at 20 Tremont Street." At trial, numerous police officers testified to the North Side/South Side dispute, and that they were familiar with the defendant as a North Sider. While the defendant did not object to testimony regarding a North Side/South Side dispute, he did object when one officer mentioned the defendant's affiliation with the "Annis Ave. Soldiers." The judge sustained the objection and told the counsel at sidebar that "[t]he question from the North Side or the South Side, the Annis Street area, is admissible. But, you know, saying the word gang, as in Hell's Angels, has the same connotation when you say a member of the Annis Street Soldiers. It conjures up the issue of a gang." He cautioned the Commonwealth to avoid word usage such as a "soldier."

The defendant contends that the evidence of gang affiliation was irrelevant and unfairly prejudicial. While the Commonwealth presented the incident at 20 Tremont Street as a fight between rival groups, the defendant contends that it was simply a brawl among partygoers, and gang affiliation did not serve to establish the identification or the motive of the shooter.

It is well-established that "gang affiliation evidence is admissible to show motive, and . . . deference [is given] to trial judges' determinations of the risk of unfair prejudice arising from such evidence." *Commonwealth* v. *John*, 442 Mass. 329, 337 (2004). See *Commonwealth* v. *Correa*, 437 Mass. 197, 201 (2002); *Commonwealth* v. *Swafford*, 441 Mass. 329, 332 (2004); *Commonwealth* v. *Smith*, 450 Mass. 395, 399 (2008). The prosecutor is "entitled to present as full a picture as possible of the events surrounding the incident itself." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269-270 (1982). In this case, the prosecutor presented evidence that the defendant was a known member of the North Side and that individuals from the North Side had a dispute with people from the South Side. The evidence showed

that the party and subsequent fight occurred in the south side of Brockton, and, at the least, the defendant participated in the fight, and partygoers were chanting "North Side" and "South Side." Given these facts, we agree with the Commonwealth that this evidence was relevant to prove the defendant's motive for having a gun and firing it. See Mass. G. Evid. § 401 (2010).

When gang affiliation is relevant to the defendant's motive, "it is within the discretion of the judge to weigh the probative value of the evidence against its prejudicial effect." *Commonwealth* v. *Correa, supra* at 201. See *Commonwealth* v. *Perez,* 47 Mass. App. Ct. 605, 608 (1999) ("Although it was agreed that the participants in the trial would refer to the Latin Kings as an 'organization' rather than as a 'gang,' that effort to shield the jury, though probably foredoomed to futility, was likely the most that the judge could do to minimize prejudice. The judge could hardly minimize prejudice to the defendants in the jury selection process without asking the potential jurors [as she did] whether their impartiality would be impaired by evidence of a defendant's gang membership"). Accordingly, the judge did not abuse his discretion by permitting the Commonwealth to introduce evidence of the defendant's affiliation with the North Side group and its dispute with the South Side. See *Commonwealth* v. *Dunn,* 407 Mass. 798, 807 (1990).

While the defendant contends otherwise, we further conclude that the judge's decision not to question prospective jurors about gang membership or issue a limiting instruction about the Commonwealth's evidence of the defendant's gang affiliation did not create a substantial risk of a miscarriage of justice. To be sure, questioning prospective jurors during voir dire about gang membership and issuing a limiting instruction regarding gang affiliation can serve to adequately minimize prejudice. See *Commonwealth* v. *Maldonado,* 429 Mass. 502, 505 (1999); *Commonwealth* v. *Correa,* 437 Mass. at 201; *Commonwealth* v. *Swafford,* 441 Mass. at 333; *Commonwealth* v. *John,* 442 Mass. at 338-339. But in this case, the Commonwealth presented strong evidence that tied the defendant to the gun, and an eyewitness — Victoria Lassiter — identified the defendant as the man who tried to enter the party with the gun. Also, she saw that same man fire the gun during the fight. Detective Hilliard spotted the

defendant ducking down between a parked car and a snowbank, and he found the gun concealed in the snowbank. According to testimony, the defendant was the only person in that vicinity in the aftermath of the gunshots.

We are not "left with uncertainty that the defendant's guilt has been fairly adjudicated" as required to reverse under the substantial risk of a miscarriage of justice standard. *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-295 (2002), quoting from *Commonwealth* v. *Azar*, 435 Mass. 675, 687 (2002). Finally, the jury acquitted the defendant on two of the three counts against him, which "suggests that they approached their duty dispassionately and were not inflamed." *Commonwealth* v. *Bly*, 444 Mass. 640, 655 (2005).

b. *The prosecutor's opening statement and closing argument.* The defendant did not object at trial to the Commonwealth's opening statement or closing argument. Hence, we review the defendant's claims of error for a substantial risk of miscarriage of justice. See *Commonwealth* v. *Randolph, supra* at 297-298. We consider the claims of improper argument in the context of the entire argument, the instructions to the jury, and the evidence at trial. *Commonwealth* v. *Beland*, 436 Mass. 273, 289 (2002).

First, regarding the Commonwealth's opening statement reference to the alerting call to the police,[7] the defendant has not shown that the prosecutor did not have a good faith belief that he would be able to prove that fact. *Commonwealth* v. *Burke*, 414 Mass. 252, 262 (1993). It could indeed be argued that evidence of the call was admissible, not for its truth, but rather to explain why the police happened to be stationed in the area. With respect to the references of hostility between the groups,[8] the judge had already indicated that such evidence would be admissible.

Second, the prosecutor's closing argument, taken as a whole,

[7]"Detective Hilliard, I expect, is going to testify that the Brockton police received a call early this night of Saturday the 29th of January. There's going to be trouble on . . . 20 Tremont Street. This is why the police are in the area that night."

[8]"[Y]ou are going to hear those two groups [the North Siders and the South Siders] don't mix in the city of Brockton. Groups of young men that hang around together and basically have a street beef, going on for a long time. The North Siders, according to this information, were going to crash the birthday party at 20 Tremont Street."

did not inappropriately vouch for the witness, Lassiter.[9] See *Commonwealth* v. *Mayne*, 38 Mass. App. Ct. 282, 286 (1995); Smith, Criminal Practice and Procedure § 35.29 (3d ed. 2007). The prosecutor did not inject his own personal beliefs about the credibility of Lassiter. He indeed asked the jury to consider whether they thought she was credible and whether they thought she was lying. In fact, the prosecutor told the jury that it was their job to determine her credibility, not his, and to apply their recollection of the evidence, not his.

Third, the portion of the prosecutor's argument about it being difficult for Lassiter to testify was merely a comment on the evidence that was presented at trial,[10] noting it was difficult for Lassiter to come forward as a witness. Where, as here, there is evidence of a witness's fear of testifying, "a prosecutor may argue that it took 'courage' or 'character' for a witness to testify." *Commonwealth* v. *Pina*, 430 Mass. 266, 269 (1999), citing *Commonwealth* v. *Jackson*, 428 Mass. 455, 461 (1998).

Fourth, the defendant claims that the prosecutor appealed to the jury's sympathy by asking them to disregard inconsistencies in the police officers' testimony. Actually, the prosecutor pointed out those inconsistencies, arguing that this was grounds to believe the officers.[11] "The credibility of witnesses is obviously a proper

---

[9] "I'm going to ask you to consider the position Victoria Lassiter is in. Did she strike you as a good person? Did she strike you as a credible person? . . . [T]his woman with no ax to grind, I suggest, not carrying the Commonwealth's water. . . . Did Victoria have any reason to overextend herself? Did she have any horse in this race, so to speak?"

[10] Lassiter reluctantly provided the police officers with the details of her frisk of the man in the camouflage jacket. When they apprehended the defendant, the police called Lassiter to identify the defendant as the man she had frisked earlier. First, the police showed Lassiter someone other than the defendant, who she immediately identified as not the shooter. Lassiter sat in a police cruiser as officers brought a second individual, the defendant, toward her. At first, Lassiter did not identify the defendant as the man she had frisked. Then she said, "That's him. That's the kid with the gun." The defendant was arrested, brought to the Brockton police station, and booked.

Lassiter testified on direct examination that she could not definitively identify the defendant as the person she saw with the gun. Although she identified the defendant as the shooter on the night of the incident and during the motion to suppress hearing, Lassiter unwillingly testified at trial against the defendant. She testified that she was afraid. The Commonwealth used her identification of the defendant at the motion to suppress hearing to impeach her testimony at trial.

[11] "[W]hen everyone else was running out and running for their lives,

subject of comment. Police witnesses are no exception." *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994). That such statements by the prosecutor were unlikely to elicit sympathy or otherwise inflame the jury is shown by the jury's acquittal on two of three charges. See *Commonwealth* v. *Bly*, 444 Mass. at 654-655.

Fifth, although it is inappropriate to reference facts that are not supported by the admitted evidence, see *Commonwealth* v. *Santiago*, 425 Mass. 491, 499-500 (1997), in the instant case, such reference to the telephone call to the police in the closing did not go to the heart of any material issue of the trial.[12] See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 451 (1993) (prejudicial errors related to collateral issues does not require reversal). The defendant's remaining claims of the prosecutor's references to facts not in evidence lack merit.[13]

Finally, we note that in his preliminary and final jury instructions, the judge informed the jury that opening statements and closing arguments are not evidence, that it was the jury's memory of the evidence and not the memories of the attorneys that was controlling, and that it was the function of the jury to decide the case based solely on the evidence. These instructions minimized any possible prejudice. See *Commonwealth* v. *Costa*, 414 Mass. 618, 629 (1993). Viewed in the context of the trial as a whole, the prosecutor's opening statement and closing argument did not create a substantial risk of a miscarriage of justice.

c. *Denial of required finding of not guilty.* The defendant argues that the judge erroneously denied his motion for a required finding of not guilty on the charge of possession of a firearm. The defendant maintains that there was insufficient evidence to support this conviction for two reasons. First, the defendant contends that there was insufficient evidence to show that he possessed the firearm. Second, he claims there was insufficient evidence that the gun was a firearm under G. L. c. 269, § 10(*a*).

---

they're running in. They are running in to try to stop this North-South act of violence that was taking place on Tremont Street. So I ask you to consider that before you judge a matter of seconds or a matter of feet too harshly. They're running in."

[12]As in the opening, the prosecutor referred to the same fact not in evidence.

[13]The defendant claims that the prosecutor impermissibly stated that people were chanting "North Side" and "South Side" outside of the party before the gunshots. Lassiter testified that they were.

Under the familiar standard, we review the evidence in the light most favorable to the Commonwealth, asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

First, the evidence produced at trial was sufficient to permit the jury to infer that the defendant possessed the firearm. The defendant was found wearing the same clothing that the witness described was worn by the shooter. The defendant hid between a snowbank and a car, where police found the gun, and Detective Hilliard testified that nobody else had been in that area. In addition, Lassiter testified that she saw the defendant with a gun and later identified him as the person with the gun. The jury were entitled to disregard her failure to identify the defendant in court based on the evidence that she was afraid of being involved. Even though the jury could have made other inferences, they could reasonably infer that the defendant possessed the gun and hid it in the snowbank. See *Commonwealth* v. *White*, 452 Mass. 133, 136 (2008); *Commonwealth* v. *Duncan*, 71 Mass. App. Ct. 150, 153-154 (2008).

Second, the evidence was also sufficient to permit the jury to conclude that the gun constituted a working firearm under G. L. c. 140, § 121, and thus to sustain a conviction under G. L. c. 269, § 10(*a*). See *Commonwealth* v. *Sampson*, 383 Mass. 750, 753 (1981). "The burden on the Commonwealth in proving that the weapon is a firearm in the statutory sense is not a heavy one. It requires only that the Commonwealth present *some* competent evidence from which the jury reasonably can draw inferences that the weapon will fire." *Commonwealth* v. *Nieves*, 43 Mass. App. Ct 1, 2 (1997). See *Commonwealth* v. *Raedy*, 24 Mass. App. Ct. 648, 654 (1987); *Commonwealth* v. *Prevost*, 44 Mass. App. Ct. 398, 403 (1998), citing *Commonwealth* v. *Bartholomew*, 326 Mass. 218, 220 (1950) (if only such slight repair, replacement, or adjustment required to make gun an effective weapon, gun will be deemed firearm within statutory definition). Here, there was evidence that the defendant was seen to have fired a gun, and Detective Hilliard testified that the gun was loaded when he found it, and that it contained four empty shells and four live rounds, all of which

was probative of operability. See *Commonwealth* v. *Mendes*, 75 Mass. App. Ct. 390, 397 (2009) (evidence of operability included three audible shots, three empty casings). Moreover, a ballistics expert testified that he test fired the weapon after inserting a center pin from his inventory.[14] The center pin was missing when he received the weapon. The expert testified that the center pin serves to rotate the cylinder of the gun, and that it is possible to manually turn the cylinder and thus fire the gun without a center pin.

The testimony of the expert witness permitted the jury to conclude that the gun in question would fire, even without a center pin. Further, the arresting officers testified that there was a center pin in place when they found the weapon. Thus, a repair or adjustment was not even needed to fire the weapon. There was sufficient evidence presented for the jury to determine that the weapon was a firearm within the meaning of the statute. The defendant's motion for a required finding of not guilty was appropriately denied.

*Judgment affirmed.*

---

[14]In light of the fact that the ballistics expert testified at trial, this case raises no issue concerning the admission of the ballistics certificate. Compare *Commonwealth* v. *Loadholt*, 456 Mass. 411, 432-434 (2010).