LENK, J.
**621 This case arises from a violent encounter among four men, one of whom had dated the other's sister. In the fight that ensued, the men threw punches, brandished knives, and made statements about one another's mothers. The defendant was charged with one count of assault and battery and one count of threatening to commit a crime. He subsequently was convicted of the lesser included offense of simple assault and threatening to commit a crime.
The defendant argues, first, that the criminal docket of one of his friends, Charles,[1] was admitted improperly as evidence against the defendant. Second, the defendant contends that the jury were not instructed correctly as to which of several alleged incidents constituted the "threat to commit a crime" with which he had been charged, thus permitting the jury to return a verdict of "guilty" without reaching a unanimous consensus as to which facts supported that charge.
*737 We conclude that both claims constitute reversible error. Accordingly, the convictions must be vacated and the matter remanded for a new trial.
Background. Viewed in the light most favorable to the Commonwealth, the jury could have found the following. See Commonwealth v. Platt, 440 Mass. 396, 397, 798 N.E.2d 1005 (2003).
On a Saturday evening in November 2014, Russell drove to a gasoline station to pump gasoline into his truck. He saw a Jeep Cherokee that he believed had followed him into the gasoline station. The Jeep was being driven by Charles, and the defendant rode in the passenger's seat. Russell previously had dated the defendant's sister, and there was ongoing animosity between the two men.[2]
Russell backed his truck up to move closer to the Jeep and told Charles and the defendant to leave him alone; they got out of the Jeep and began "hitting" and "punching" his truck. Russell locked the doors and drove away. Charles and the defendant followed, this time with the defendant driving. In an attempt to outrun the Jeep, Russell began speeding, but the Jeep also increased its speed, **622 at times following as closely as six inches behind Russell's truck.[3]
Russell stopped his truck in the driveway of his friend Daniel's house. Daniel and his wife, Carrie, were sitting on the porch. Charles and the defendant parked the Jeep directly behind Russell. Russell locked the doors and remained in his truck, while the defendant and Charles got out of the Jeep and approached the truck, the defendant on the driver's side and Charles on the passenger's side. The two men began yelling at Russell and banging on the windows and doors.
Russell and Daniel testified that Charles warned Daniel to stay on the porch, or Charles would stab him. Carrie, however, recalled the defendant as the one who warned Daniel to "go back in the house" or the defendant would stab him. Charles had a knife; the defendant did not.
Russell testified that, at one point, Charles told him that Charles "was going to rape [his] mother and kill [his] father," and that "he went to jail for rape and he'll do it again." Carrie testified that it was the defendant who told Russell that "he was going to go to [Russell's] house and rape his mother in the ass." The defendant recalled telling Russell something to the effect of, "[G]et out of the truck and fight me."
At one point, Russell partially lowered the driver's side window, in an effort to communicate better with the defendant. The defendant placed his hand in the crack between the window and the frame, pushed the window down, reached into the truck, and grabbed Russell's hand, grasping a thumb that recently had been surgically reattached. The defendant grazed Russell's head in an attempt to punch him.
Ultimately, Daniel came down from the porch and tackled the defendant. The two rolled around on the ground and threw punches. While this was going on, Carrie called the police, and Russell climbed out of the window of his truck. Charles eventually pulled the defendant away from Daniel.
*738 Charles and the defendant ran back to the Jeep and drove away.[4] That Monday, **623 the defendant went to the police station to file a report concerning his injuries and the damage to the vehicle.
The defendant was charged with one count of assault and battery, G. L. c. 265, § 13A (a ), with respect to Russell, and one count of threatening to commit a crime, G. L. c. 275, § 2. He was not charged with assaulting Daniel, the man with whom he had fought in the bushes.
At trial, the defendant testified on his own behalf. On cross-examination, he maintained that, during the altercation in Daniel's driveway, he did not see Charles get out of the Jeep until Charles "got out of the car to help me up" from the ground. "That was the only time I seen him out of the car." The defendant also testified that he did not see Charles take out a knife. The prosecutor then sought to introduce a copy of the certified criminal docket in Charles's case, which reflected that Charles had pleaded guilty to assault by means of a dangerous weapon for an incident charged on the same day in November 2014 as the incident with which the defendant was charged. The judge allowed the evidence to be introduced, over the defendant's objection.
The jury returned a verdict of guilty on the lesser included offense of simple assault and the offense of threatening to commit a crime. The defendant was sentenced to eighteen months of supervised probation on each charge, to run concurrently.
Discussion. On appeal, the defendant raises two claims of error. First, he argues that the certified docket sheet from Charles's case should not have been admitted. Second, he argues that the jury should have been given a specific unanimity instruction with respect to the offense of threatening to commit a crime.
1. Introduction of certified criminal docket. The defendant objected to the admission of the certified criminal docket sheet on the grounds that the evidence constituted hearsay, violated his right to confrontation, and was substantially more prejudicial than probative.
a. Hearsay. An out-of-court statement is considered hearsay, and ordinarily is not admissible, where it is offered to prove the truth of the matter asserted therein. See Commonwealth v. Purdy, 459 Mass. 442, 452, 945 N.E.2d 372 (2011). See also Mass. G. Evid. § 801(c) (2019).
The docket sheet in Charles's case reflected that he pleaded guilty to committing an assault by means of a dangerous weapon **624 on the day of the altercation at issue here. There is no question that the Commonwealth offered the statements for their truth. The Commonwealth sought to use the plea as evidence that Charles had, in fact, possessed a dangerous weapon -- in particular, a knife -- on that day. The docket sheet was to be used to challenge the defendant's credibility, as the defendant had testified that he had not seen Charles with a knife. The judge allowed the introduction of the criminal docket for its truth, as a "public document, certified, as an exception to the hearsay rule."[5] See Mass. G. Evid. § 803(8) (2019). *739 Regardless of whether the docket itself might have been admissible, the statements contained within it nonetheless constitute a second layer of inadmissible hearsay. Charles's guilty plea is a statement independent of the docket within which it is memorialized. See Julian v. Randazzo, 380 Mass. 391, 394, 403 N.E.2d 931 (1980) (statements contained within reports may be inadmissible as "second level" hearsay). "[E]vidence based on a chain of statements is admissible only if each out-of-court assertion falls within an exception to the hearsay rule" (citation omitted). Commonwealth v. Cassidy, 470 Mass. 201, 216, 21 N.E.3d 127 (2014). See United States v. Mackey, 117 F.3d 24, 28 (1st Cir.), cert. denied, 522 U.S. 975, 118 S.Ct. 431, 139 L.Ed.2d 331 (1997) ("hearsay statements by third persons ... are not admissible under [ Fed. R. Evid. 803(8) ] merely because they appear within public records"). Without an exception for this second level of hearsay, the substance of Charles's plea should not have been admitted.
Section 803(22) of the Massachusetts Guide to Evidence (2019) is instructive as to the admissibility in a criminal trial of a guilty plea.[6] See Flood v. Southland Corp., 416 Mass. 62, 70, 616 N.E.2d 1068 (1993) (adopting principles of Proposed Mass. R. Evid. 803[22] ). Under § 803, a guilty plea may be admissible where it constitutes a prior judgment "against the defendant." See Mass. G. Evid. § 803(22)(D). When offered by the Commonwealth in a criminal case, however, prior judgments against individuals other than the defendant are not admissible "for a purpose other than impeachment."
**625 Id. See, e.g., Commonwealth v. Powell, 40 Mass. App. Ct. 430, 435-437, 665 N.E.2d 99 (1996) (joint venturer's guilty plea not admissible to prove armed robbery had transpired).
The Commonwealth argues on appeal that it sought to use Charles's guilty plea not as substantive evidence but, rather, to impeach the defendant's credibility. Had Charles testified, the Commonwealth might have been permitted to use Charles's guilty plea to impeach his credibility. See Mass. G. Evid. § 609 (2019). See also Commonwealth v. Supplee, 45 Mass. App. Ct. 265, 268, 697 N.E.2d 547 (1998) (prior conviction of witness appropriately may be used "to impeach the credibility of that witness" [emphasis in original] ). Cf. Commonwealth v. Roderick, 429 Mass. 271, 274-275, 707 N.E.2d 1065 (1999) (defendant's prior conviction was admissible to impeach credibility of defendant-witness). We are aware of no case, however, in which we have permitted the prior judgment in a case where the defendant was someone other than the current defendant to be used to impeach the current defendant's credibility. See Powell, 40 Mass. App. Ct. at 436, 665 N.E.2d 99 ("whereas proof of [third party's] guilty plea could be used to impeach [third party] as a witness, it could not be used as evidence against [defendant]"). Nor have we been given any reason to expand the exception today.
Accordingly, we conclude that Charles's guilty plea does not fall under the prior judgments exception to the hearsay rule. In the absence of any other exception, evidence of the guilty plea should not have been admitted.[7]
*740 Where, as here, the defendant objected, we review for prejudicial error. See Commonwealth v. DePina, 476 Mass. 614, 624, 73 N.E.3d 221 (2017). "An error is prejudicial if we cannot find with fair assurance that it did not substantially sway[ ] the verdict" (quotations and citation omitted). Id.
As the Commonwealth consistently has acknowledged, the purpose **626 of entering the criminal docket sheet was to challenge the defendant's credibility. At bottom, the trial was a contest of credibility. Whereas Russell claimed that the defendant forced down Russell's driver's side window, threw punches, and grabbed his thumb, the defendant testified that he never touched Russell and fought only with Daniel. In weighing the conflicting testimony, the jury necessarily were required to evaluate the defendant's credibility. The prosecutor argued in closing that the jury should rely on the docket sheet to decide whom to believe.
The introduction of the criminal docket sheet also risked proving the defendant's guilt by association. Whereas the defense strategy was to portray the defendant and Charles as the victims of the altercation, the fact that Charles confessed to committing a crime had the potential to invert that perception. Moreover, the official nature of the certified docket carried the weight of judicial authority; the document proclaimed the defendant's companion guilty in the eyes of the law. There was risk that, "as soon as the [g]overnment produced the record," the jury would see the defendant, not as presumptively innocent, but, rather, as "presumptively or prima facie guilty," See Kirby v. United States, 174 U.S. 47, 56, 61, 19 S.Ct. 574, 43 L.Ed. 890 (1899) (reversal required where others' convictions were admitted against defendant). The admission of Charles's plea, therefore, was prejudicial error.
b. Right to confrontation. Under the Sixth Amendment to the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." See Commonwealth v. Zeininger, 459 Mass. 775, 785, 947 N.E.2d 1060, cert. denied, 565 U.S. 967, 132 S.Ct. 462, 181 L.Ed.2d 301 (2011).[8] Where the Commonwealth seeks to introduce a declarant's testimonial statements as evidence against a defendant, the defendant is guaranteed the opportunity to test the declarant in the "crucible of cross-examination." See Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
In the absence of the opportunity to cross-examine, we have long held that the conviction of one individual may not be used during the prosecution of another to prove the facts underlying the conviction. See Commonwealth v. Elisha, 3 Gray 460, 460-461 (1855) (sellers' convictions of stealing property not admissible against buyer *741 charged with receiving stolen goods where **627 defendant had "no opportunity nor right to be heard" during seller's trial). See also Commonwealth v. Martinez, 425 Mass. 382, 398-399, 681 N.E.2d 818 (1997) (one person's guilty plea may not be used to prove guilt of another); Commonwealth v. Tilley, 327 Mass. 540, 548, 99 N.E.2d 749 (1951) (art. 12 of Massachusetts Declaration of Rights prohibits use of criminal conviction against another party to establish truth of any fact involved in conviction).[9] "[I]t is an elementary principle of justice, that one [person] shall not be affected by another's act or omission, to which he is a stranger." Elisha, supra at 461.
In Kirby, 174 U.S. at 53-55, 19 S.Ct. 574, the United States Supreme Court reached the same result. There, the defendant had been charged with receiving stolen postage stamps. To prove that the stamps were stolen, the government entered the records of the convictions of the three men who stole them, two of whom had pleaded guilty and one of whom had been convicted at trial. The Court concluded that the convictions were admitted in error, reasoning that "[the defendant] was not present when [two of the men] confessed their crime by pleas of guilty," nor when the third man "was proved to be guilty by witnesses"; the defendant "would not have been permitted to examine [the two men] upon their pleas of guilty, nor cross-examine the witnesses introduced against [the third man]"; and the defendant would not have been permitted to "introduce witnesses to prove that [the men] were not in fact guilty." Id. at 54, 19 S.Ct. 574. Accordingly, the defendant was deprived of the opportunity to confront the witnesses against him; "he was confronted only with the record of another criminal prosecution." Id. at 55, 19 S.Ct. 574.[10] ,[11]
*742 In this case, Charles's guilty plea was used to establish that Charles **628 possessed a knife. Had the defendant been permitted to cross-examine Charles, he could have inquired as to why Charles had pleaded guilty, whether Charles had possessed a knife, or whether that knife would have been visible at the time of the altercation. In the absence of such an opportunity, it was constitutional error to allow the introduction of evidence of Charles's guilty plea as proof of the facts underlying the conviction.
Where, as here, an objection to constitutional error is preserved, we must vacate the defendant's convictions unless we are satisfied that the error was harmless beyond a reasonable doubt. See Commonwealth v. Nardi, 452 Mass. 379, 394, 893 N.E.2d 1221 (2008). For the reasons discussed, we cannot say that the admission of the criminal docket sheet was harmless beyond a reasonable doubt.[12]
2. Jury instructions. Through Carrie's testimony, the Commonwealth presented evidence that the defendant made two statements, **629 either of which could have constituted a threat to commit a crime. First, the defendant told Daniel, "Go back in the house, I'm going to stab you." Second, the defendant told Russell "that he was going to go to [Russell's] house and rape his mother in the ass." The defendant argues that, in light of the evidence presented, a specific unanimity instruction was required. As he did not request such an instruction at trial, we review for a substantial risk of a miscarriage of justice.[13] See Commonwealth v. Comtois, 399 Mass. 668, 676, 506 N.E.2d 503 (1987).
"It is beyond dispute that the jury verdict in a criminal trial ... must be unanimous." Commonwealth v. Santos, 440 Mass. 281, 284, 797 N.E.2d 1191 (2003), quoting Commonwealth v. Berry, 420 Mass. 95, 111, 648 N.E.2d 732 (1995). A specific unanimity instruction "indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." Commonwealth v. Keevan, 400 Mass. 557, 566-567, 511 N.E.2d 534 (1987).
Such an instruction is required when, "on a single charged offense, the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged."
*743 Santos, 440 Mass. at 284-285, 797%20N.E.2d%201191">797 N.E.2d 1191.[14] See, e.g., Commonwealth v. Conefrey, 420 Mass. 508, 514, 650 N.E.2d 1268 (1995) (victim alleged eight instances of sexual assault). In such a case, "the jury must all agree as to at least one, specific incident"; otherwise, "there is not unanimous agreement that [the defendant] has committed any crime." Santos, supra at 285, 797 N.E.2d 1191. "Absent a specific unanimity instruction, the jury might mistakenly believe that they could convict the defendant even if they disagreed as to which of the alleged criminal acts he [or she] had committed." Id. See Commonwealth v. Zane Z., 51 Mass. App. Ct. 135, 138, 743 N.E.2d 867 (2001).
The jury "need not agree as to every detail" regarding "how" the crime was committed. See Santos, 440 Mass. at 285, 286, 797 N.E.2d 1191 (jury need not agree "precisely which threat, or which application of force, caused the victim to part with her money"). See, e.g., **630 Commonwealth v. Cyr, 433 Mass. 617, 620, 623-624, 744 N.E.2d 1082 (2001) (no instruction required as to whether murder was committed by stabbing or by fire); Commonwealth v. Thatch, 39 Mass. App. Ct. 904, 905, 653 N.E.2d 1121 (1995) (no instruction required as to which of several acts of penetration during single episode constituted rape). The jury nonetheless must agree that the crime was committed. Where there are "distinguishing differences between the successive events," there may be "reason to fear that the jury will pick and choose among the alleged incidents and convict the defendant while disagreeing as to which of them were committed." See Santos, supra at 286, 797 N.E.2d 1191.
In this case, the jury were presented with two incidents that, although proximate in time, purportedly were committed against two separate victims. In the first incident, Daniel was threatened with immediate harm to his person by means of a knife; in the second, Russell was threatened with future harm to his mother by means of sexual assault.
On this record, there were reasons for the jury to question whether the defendant made either threat. Both statements were overheard by Carrie, from the front porch of her house, some distance from the commotion. As to the first statement, Daniel and Russell recalled that it was Charles, and not the defendant, who threatened to stab Daniel, and all three witness saw Charles, not the defendant, with a knife. As to the second statement, Russell testified that it was Charles, and not the defendant, who threatened to rape Russell's mother.
The defendant was charged only with one count of threatening to commit a crime; yet, in closing, the Commonwealth argued both that the defendant "threatened Daniel that he was going to stab him if he didn't go back in the house" and that the defendant "threatened [Russell]'s mother in the heat of all of this exchange." The judge also noted the confusion:
THE JUDGE : "The threat to commit a crime, who's the alleged victim there?"
THE PROSECUTOR : "Your Honor, the testimony wasn't as clear as, you know, it could have been in the sense that -- but [Carrie] explained that the threat was to [Daniel], saying that, if you don't go inside, I'll stab you, and then also to [Russell], that he was -- that he would *744 rape his mother and that those were the two statements that would qualify as elements **631 for the threats."[15]
The judge gave no instruction or clarification on this issue, thereby permitting the jury to consider evidence of either threat. As a result, the jurors reasonably could have reached disparate conclusions of fact. Compare Conefrey, 420 Mass. at 514, 650 N.E.2d 1268 ("Some jurors may have convicted the defendant on the basis of one alleged incident, while others may have convicted him based upon any of the [others]"). In the circumstances of this case, the lack of clarity amounts to a substantial risk of a miscarriage of justice. Because we are not satisfied that the verdict was unanimous, the conviction of threatening to commit a crime must be vacated.
Conclusion. Both verdicts are vacated and set aside, and the matter is remanded to the District Court for a new trial.
So ordered.

Because of the result we reach, we refer to the individuals involved by their first names.

The defendant testified that, at the gasoline station, Russell made a shooting motion with his hand and proclaimed that he was going to "shoot" at the defendant's house. Russell denied that the interaction occurred.

The defendant testified that, at one point, Russell stopped his truck in the middle of the street and tossed a brick out of the driver's side window of his truck, striking the Jeep. Russell denied this occurrence. He attributed damage to the Jeep to Daniel having thrown a brick at a later point in the encounter.

Daniel threw a brick at the Jeep before it drove away. The defendant testified that Russell also shot an arrow at the windshield of the Jeep while the defendant and Charles were retreating. Photographs of the damage to the Jeep were introduced at trial. Although Russell acknowledged possessing the bow and arrow, he denied firing the weapon; he maintained that he had unstrung the bow after using it while hunting earlier in the day.

Evidence introduced under this exception is admissible for the truth of the matter asserted. See Mass. G. Evid. § 803 (2019). The judge did not give any limiting instruction here that would have precluded the jury from considering the statements for their truth.

Neither the Commonwealth nor the judge invoked Mass. G. Evid. § 803(22) at trial, relying instead upon Mass. G. Evid. § 803(8) to admit both the docket and the guilty plea contained therein.

As discussed infra, to conclude otherwise would run afoul of the confrontation clause of the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. The drafters of the Federal rule appear to have reached the same conclusion. See Flood v. Southland Corp., 416 Mass. 62, 70, 616 N.E.2d 1068 (1993) (our rule is "substantively identical to the Federal rule of the same number"). The Advisory Committee's Note to Fed. R. Evid. 803(22), 56 F.R.D. 183, 319 (1972), provides in relevant part,
"the [prior judgments] exception [to the hearsay rule] does not include evidence of the conviction of a third person, offered against the accused in a criminal prosecution to prove any fact essential to sustain the judgment of conviction. A contrary position would seem clearly to violate the right of confrontation."

With respect to the hearsay rule, art. 12 is coextensive with the Sixth Amendment. See Commonwealth v. DeOliveira, 447 Mass. 56, 57 n.1, 849 N.E.2d 218 (2006).

This is distinct from a situation in which the Commonwealth attempts to prove, through a defendant's certified criminal docket, that the defendant previously has been convicted of a crime. For example, where the fact finder must determine whether a firearms offense is the defendant's third such offense, a docket demonstrating the fact of two prior offenses may be admissible, as it goes to show "the fact of conviction," as opposed to "the underlying evidentiary fact." See Commonwealth v. Weeks, 77 Mass. App. Ct. 1, 2, 7, 927 N.E.2d 1023 (2010).

As discussed, that the docket sheet itself possibly might have been admissible at trial does not imply the admissibility of the guilty plea contained therein. "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because -- having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial -- they are not testimonial." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The same cannot be said, however, for the underlying guilty plea.

In Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court articulated that the Sixth Amendment applies to out-of-court statements that are "testimonial" in nature. To determine whether a statement is testimonial, we look to "the primary purpose that a reasonable person would have ascribed to the statement, taking into account all of the surrounding circumstances." See Commonwealth v. Imbert, 479 Mass. 575, 580, 97 N.E.3d 335 (2018), quoting Williams v. Illinois, 567 U.S. 50, 84, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012). "[P]lea allocution[s]" constitute "plainly testimonial statements." Crawford, supra at 64, 124 S.Ct. 1354. To the extent that a guilty plea conceptually can be divorced from the allocution, the Courts of Appeals for several Federal Circuits have determined explicitly that the guilty plea itself also is testimonial. See, e.g., United States v. Head, 707 F.3d 1026, 1031-1032 (8th Cir. 2013) ; United States v. McClain, 377 F.3d 219, 221-222 (2d Cir. 2004). A guilty plea is "a form of prior in-court testimony," "formally given in court, under oath, and in response to questions by the court or the prosecutor." See Head, supra at 1032 ; McClain, supra at 221. The individual pleading guilty reasonably expects that his or her statement will be available to the government as evidence; it will constitute the basis for convicting and sentencing the declarant. Where guilty pleas "are used as proof of facts underlying the crime charged," they trigger the protections of the confrontation clause. See United States v. Causevic, 636 F.3d 998, 1003-1004 (8th Cir. 2011). See also State v. Tollardo, 2012-NMSC-008, ¶ 18, 275 P.3d 110.

Having determined that the evidence was admitted in error, we need not reach the question whether it also was substantially more prejudicial than probative. See Mass. G. Evid. § 403 (2019). See also Commonwealth v. Santiago, 425 Mass. 491, 504, 681 N.E.2d 1205 (1997), S.C., 427 Mass. 298, 693 N.E.2d 127 and 428 Mass. 39, 697 N.E.2d 979, cert. denied, 525 U.S. 1003, 119 S.Ct. 514, 142 L.Ed.2d 426 (1998) ("Admission of a guilty plea is of even less value because the plea is often the result of bargaining with the prosecutor and is not necessarily the equivalent of an admission of full guilt for the act alleged"); Commonwealth v. Martinez, 425 Mass. 382, 399, 681 N.E.2d 818 (1997) ("a plea of guilty by one person is not admissible to prove the guilt of another and may be highly prejudicial").

But see Commonwealth v. Conefrey, 420 Mass. 508, 516 & n.11, 650 N.E.2d 1268 (1995) (denial of requested specific unanimity instruction required reversal where "there [had] been no jury verdict within the meaning of the Sixth Amendment" [citation omitted] ).

Several Federal Courts of Appeals have required specific unanimity instructions where there exists a "genuine risk," United States v. Sayan, 968 F.2d 55, 65 (D.C. Cir. 1992), or "genuine danger," United States v. Schiff, 801 F.2d 108, 114-115 (2d Cir. 1986), cert. denied, 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987), of jury confusion. See Conefrey, 420 Mass. at 514 n.10, 650 N.E.2d 1268, and cases cited.

According to the complaint, the defendant was charged with one count of threatening to commit a crime "to wit: bodily harm with knife," in violation of G. L. c. 275, § 2. At no point, however, were the jury made aware of this detail. By contrast, the judge repeatedly identified Russell as the victim of the charged assault.