NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-999

COMMONWEALTH

vs.

TIMOTHY M. TATRO, SECOND.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in the District Court, the defendant was convicted of assault by means of a dangerous weapon and violating an abuse prevention order. The defendant raises no issue with respect to the latter conviction, only contending on appeal that his assault conviction must be reversed because he was prejudiced by the admission of certain police testimony regarding the defendant's purported prior bad acts. Concluding that the admission of the testimony did not create a substantial risk of a miscarriage of justice, we affirm.

Background. In the early evening of March 23, 2022, Trooper Scott Mason of the Massachusetts State Police responded to the defendant's residence to assist the Cheshire Police Department with serving a restraining order on the defendant.

After briefly speaking with officers on scene, Trooper Mason went back to his cruiser to confirm the restraining order and called for another trooper to assist. Trooper Mason then approached the defendant's front door, knocked and announced himself, and asked the defendant to come to the door so he could "explain that [the defendant] ha[d] to vacate" the property. Trooper Mason advised the defendant that if he did not open the door they would "have to come in and get him." In the meantime, an officer on scene spoke with the owner of the property, who granted permission for police to enter the residence to arrest the defendant.

Shortly thereafter, Trooper Mason and Trooper Shane Johnson approached the front door, this time with a key to the residence that they had received from the owner. As Trooper Mason unlocked the door and began to push it open, it was slammed shut from the inside. He then opened the door again and saw the defendant standing with a crossbow pointed at the trooper's chest. The crossbow appeared to be loaded. In response, Trooper Mason deployed his taser, drew his firearm, and backed away from the residence. Following several hours of unsuccessful negotiations with the defendant, police forced entry into the residence and arrested the defendant.

Discussion. On appeal, the defendant challenges the admission of two statements from Trooper Mason's testimony as

2

inadmissible evidence of prior bad acts: (1) Trooper Mason's statement "I had dealt with [the defendant] before in the past, and I just wanted to confirm there was no firearms inside the house," and (2) Trooper Mason's response, when asked why he had approached the defendant's residence with his taser drawn, "[b]ecause our prior run-ins with [the defendant], where he's either fought or resisted arrest with us. Not knowing what he was doing inside of that residence. I just felt it was way safer and I could justify having my taser out, prior to entering." The defendant argues that the erroneous admission of these statements, which he characterizes as propensity evidence, unduly prejudiced him and warrants reversal of the assault conviction.

Because the defendant did not object to the testimony, our review is limited to whether its admission was error, and, if so, whether that error created a substantial risk of a miscarriage of justice. See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 (2023). "In conducting this analysis, we are guided by four factors: '[w]e consider [(1)] the strength of the Commonwealth's case, [(2)] the nature of the error, [(3)] the significance of the error in the context of the trial, and [(4)] the possibility that the absence of an objection was the result of a reasonable tactical decision'" (citation omitted). Commonwealth v. Desiderio, 491 Mass. 809, 816 (2023).

3

"Evidence of a defendant's prior bad acts is not admissible to demonstrate the defendant's bad character or propensity to commit the crime charged." Commonwealth v. West, 487 Mass. 794, 805 (2021). To the extent that Trooper Mason's testimony constituted evidence of prior bad acts by the defendant, such evidence "may be admissible to prove opportunity, intent, preparation, plan, knowledge, pattern of operation, or common scheme or course of conduct, as long as the probative value of the evidence is not outweighed by the risk of unfair prejudice" (citation omitted). Commonwealth v. Foreman, 101 Mass. App. Ct. 398, 408 (2022). However, we need not decide whether the judge erred in not excluding, sua sponte, Trooper Mason's testimony because, in any event, we are convinced that it did not "'materially influence[ ]' the guilty verdict" (citation omitted). Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).

"[J]udges in jury-waived trials are presumed to know and correctly apply the law." Commonwealth v. Watkins, 63 Mass. App. Ct. 69, 75 (2005). There is no indication that the judge improperly relied on Trooper Mason's challenged testimony as propensity evidence -- namely, as evidence to show that because the police had prior dealings with the defendant in the past in which he had resisted arrest, the defendant was likely to have assaulted Trooper Mason in this instance. See Commonwealth v. Batista, 53 Mass. App. Ct. 642, 648 (2002) (presumption that

4

judge in jury-waived trial correctly applied law stands "absent contrary indication").

The defendant argues that because the judge made no reference to the bad act evidence, any doubt as to whether the judge considered the impermissible propensity evidence can only be resolved in his favor and thus prejudice must be assumed. We note that the case on which the defendant relies for this proposition, Commonwealth v. Darby, 37 Mass. App. Ct. 650 (1994), is readily distinguishable from the case at bar. In that case, supra at 654-656, we reversed a judgment in a jury-waived trial where the judge erroneously admitted a "grossly offensive and inflammatory" photograph of the defendant and explicitly attributed probative value to the photograph, and the evidence of guilt was not overwhelming.

Here, not only was there no objection to the testimony, contrast Darby, 37 Mass. App. Ct. at 652, but there was no other mention of the statements at trial. Compare Commonwealth v. Dwyer, 448 Mass. 122, 128-129 (2006) (bad acts evidence "overwhelmed" evidence of charged conduct). Both statements were brief, spanning a total of eight lines of transcript, and were offered to explain why Trooper Mason took certain actions leading up to his encounter with the defendant. See Foreman, 101 Mass. App. Ct. at 408 ("the Commonwealth is 'entitled to

present as full a picture as possible of the events surrounding the incident'" [citation omitted]).

Moreover, absent the challenged statements, the Commonwealth's case against the defendant was strong. See Commonwealth v. Saulnier, 84 Mass. App. Ct. 603, 607 (2013). Trooper Mason and Trooper Johnson each testified that after opening the door to the defendant's residence -- which had just been slammed shut from the inside -- they saw the defendant pointing his loaded crossbow at Trooper Mason's chest; body camera footage capturing this event was also admitted in evidence. Furthermore, the defendant testified that he knew the troopers were at his door, and that he had heard Trooper Mason knock, state his intention to enter the residence, and insert the key into the door moments before the assault. And when asked if his statement, "I had no intention on hurting anyone," meant that he had no intention of firing the crossbow, the defendant responded, "No, I mean, I intended for them to shoot me." For that plan to work, the defendant had to intend that the police be placed in apprehension of an imminent battery.

In short, following our review of the evidence and the case as a whole, see Commonwealth v. Amirault, 424 Mass. 618, 646-647 (1997), "[w]e are not 'left with uncertainty that the defendant's guilt has been fairly adjudicated' as required to reverse under the substantial risk of a miscarriage of justice

6

standard."  Commonwealth v. Weeks, 77 Mass. App. Ct. 1, 12 (2010), quoting Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002).

Judgments affirmed.

By the Court (Massing, Ditkoff & Singh, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  August 21, 2023.

---

[1] The panelists are listed in order of seniority.