# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUSH WESLEY WILSON,

        Defendant-Appellant.

UNPUBLISHED
June 14, 2016

No. 326139
Wayne Circuit Court
LC No. 14-008995-FH

Before: JANSEN, P.J., and O'CONNELL and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of four counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a child who was at least 13 years of age but less than 16 years of age), and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with a child who was at least 13 years of age but less than 16 years of age, and defendant was at least five years older than the child). Defendant was sentenced, as a third habitual offender, MCL 769.11, to 20 to 30 years' imprisonment for his CSC-III convictions, and two to four years' imprisonment for his CSC-IV convictions. We affirm defendant's convictions, but remand for further proceedings in accordance with our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

Defendant was introduced to the 15-year-old victim, TB, when she was 14 years old. On August 27, 2013, the day of the incident, defendant called TB's mother and informed her of a house where her and TB could live because defendant knew that the mother and TB were temporarily living at the home of TB's aunt. Defendant asked if TB could help him clean out the house. Defendant informed TB's mother that there would be others at the home helping to clean. After obtaining permission from her mother, TB agreed to help defendant.

Shortly thereafter, defendant arrived at the home of TB's aunt. TB got into defendant's car, and defendant drove her to the house. When they arrived at the house, defendant and TB began cleaning the upstairs bedroom. After they were finished, defendant and TB went downstairs and began talking. Defendant told TB that he would be able to get her a job at a fast food restaurant in order to help her mother. Defendant then told TB that he also would be able to get her a job that paid $400 or $500 per night. TB interpreted this to mean prostitution.

Defendant continued to ask TB about prostitution until TB said that she would be interested in an attempt to get defendant off the subject.

Defendant then led TB back into the upstairs bedroom of the house. When they entered the bedroom, defendant performed oral sex on TB. Defendant then engaged in sexual intercourse with TB before forcing her to perform oral sex on him. Defendant then handed TB $20 and drove her back to her aunt's house. When TB arrived home, her aunt became suspicious that something inappropriate occurred between TB and defendant. After she questioned TB, TB told her what had occurred. When defendant came back to the home of TB's aunt, TB's aunt would not let him leave until the police arrived.

Defendant first argues that the trial court abused its discretion when it admitted evidence of defendant's prior convictions for first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age), pursuant to MCL 768.27a. We disagree.

We review a trial court's decision whether to exclude evidence for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id*.

Before trial, the prosecution filed a notice of intent to use other acts of charged misconduct pursuant to MCL 768.27a. In the notice, the prosecution stated its intent to introduce defendant's previous convictions of two counts of CSC-I for sexually assaulting his six-year-old daughter over the course of two years. In response, defendant filed a motion opposing admission of the other acts evidence. The trial court then held a hearing on the issue. After hearing from the parties, the court held that evidence of defendant's prior convictions was more probative than prejudicial and was, therefore, admissible at trial.

MCL 768.27a(1) provides, in part, "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "[A] defendant's character and propensity to commit the charged offense is highly relevant because 'an individual with a substantial criminal history is more likely to have committed a crime than is an individual free of past criminal activity.' " *Watkins*, 491 Mich at 470 (citation omitted). MCL 768.27a supersedes MRE 404(b) in cases in which the statute applies. *Id*. at 476-477. MRE 404(b) provides, in part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

What is considered to be a "listed offense" under the statute is "defined in section 2 of the sex offenders registration act." MCL 768.27a(2)(a). The Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*., defines a "listed offense" as "a tier I, tier II, or tier III offense." MCL 28.722(j). Both the charged offenses, CSC-III and CSC-IV, and the offense that was introduced as other acts evidence, CSC-I, qualify as listed offenses under the statute. MCL 28.722(u) and (w).

While defendant's previous convictions were therefore admissible under MCL 768.27a, the Michigan Supreme Court has held that MCL 768.27a remains subject to MRE 403. *Watkins*, 491 Mich at 486. MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Court in *Watkins* held that "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "To weigh the propensity inference derived from other-acts evidence in cases involving sexual misconduct against a minor on the prejudicial side of the balancing test would be to resurrect MRE 404(b), which the Legislature rejected in MCL 768.27a." *Id*. at 486.

However, other acts evidence admissible under MCL 768.27a may still be excluded under MRE 403 as unfairly prejudicial. The Court in *Watkins* listed six illustrative and nonexhaustive considerations for the trial court to use in deciding whether to exclude evidence as overly prejudicial in the context of MCL 768.27a:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In regard to the first factor, the previous offenses and the instant incident all involved sexual penetration with a minor. Although the details of the prior convictions were not admitted at trial, the previous offenses and the instant offense were " 'of the same general category because they involve[d] sex crimes . . . against children.' " See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (citation omitted). In regard to the second factor, while the previous assaults occurred approximately 15 years before the incident in question, this fact is not dispositive. MCL 768.27a does not contain a temporal limitation. This Court has held that "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Furthermore, as noted by the trial court, defendant was in prison until 2008 with regard to the previous convictions, and the incident in this case occurred in 2013. Thus, although the offenses occurred 15 years apart, the instant offense occurred five years after defendant was released from prison. In regard to the infrequency of the other acts, defendant's previous convictions were the result of a series of sexual assaults committed by defendant against his six-year-old daughter over the course of two years. While there is no evidence of intervening acts, the other acts in question are supported by a conviction, evidence of which was read into the record at trial. Finally, in regard to the need for other acts evidence, despite TB being 17 years old at the time of trial, the other acts evidence helped bolster her testimony after defense counsel pointed out minor inconsistencies in her testimony. Furthermore, there were no eyewitnesses to the incident. We also note that there was no danger regarding any of the other considerations mentioned in MRE 403. Therefore, the trial court did not abuse its discretion when it ruled that defendant's other acts should not be excluded under MRE 403. Accordingly, the trial court properly permitted the prosecution to admit evidence regarding defendant's other acts under MCL 768.27a.

-3-

Defendant next argues that the trial court violated his rights under the Confrontation Clause when the court allowed the parties to stipulate to reading defendant's prior convictions into the record instead of calling a witness to testify regarding the convictions. Defendant also argues that he was denied the effective assistance of counsel when his trial counsel agreed to this stipulation. We disagree.

"Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citations and quotation marks omitted). Waiver differs from forfeiture, which is simply the failure to timely assert a right. *Id*. A party may appeal an issue he has forfeited; however, "[o]ne who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (citations and quotation marks omitted). Before defendant's testimony, the prosecution told the jury that "[i]t has been stipulated by and between the prosecution and defense that on June 2, 2000, the defendant was convicted of two counts of criminal sexual conduct in the first degree for engaging in criminal sexual conduct with a minor under the age of 13." In response, defense counsel stated, "That's a correct stipulation." Under these facts, defendant waived his right to challenge the introduction of his prior convictions on Confrontation Clause grounds.

Defendant argues that because of the importance of his right to confrontation, he was required to personally waive this right. As will be discussed below, defendant did not have a right to confrontation regarding his previous convictions. However, assuming, *arguendo*, that defendant did have such a right, the argument that defendant had to personally waive the right is without merit. In *People v Buie*, 491 Mich 294, 306; 817 NW2d 33 (2012), the Michigan Supreme Court held that "[t]here is no doubt that the right of confrontation may be waived and that waiver may be accomplished by counsel." The Court adopted the following rule to determine if the right to confrontation was validly waived by counsel: "[I]f the decision constitutes reasonable trial strategy, which is presumed, the right of confrontation may be waived by defense counsel as long as the defendant does not object on the record." *Id*. at 315. Counsel's decision not to examine the complainant in defendant's previous criminal sexual conduct case was clearly reasonable trial strategy. Avoiding detailed testimony regarding the previous assault was a wise decision by counsel. Because defendant did not object on the record, defendant's trial counsel properly waived defendant's right of confrontation.

Nevertheless, even assuming that defendant did not waive the issue, a review of the record demonstrates that the trial court did not commit plain error affecting defendant's substantial rights in allowing evidence of defendant's previous convictions to be read into the record. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted). The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI. The right to confrontation applies to both federal and state prosecutions. *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Testimonial statements of witnesses absent from trial are therefore admissible only when the original declarant is unavailable and the defendant has had a prior opportunity to cross-examine that declarant. *Id*. at 59. Whether a statement is considered to be testimonial depends on whether it is a " 'declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id*. at 51 (citation omitted). In other words, "the Confrontation Clause applies only to statements used as substantive evidence."

*People v Fackelman*, 489 Mich 515, 528; 802 NW2d 552 (2011). In the present case, defendant's prior convictions were introduced pursuant to MCL 768.27a as substantive evidence of defendant's guilt. Therefore, introduction of defendant's convictions would violate the Confrontation Clause if the evidence is considered to be testimonial.

Examples of testimonial statements include prior testimony at a preliminary hearing, before a grand jury, at a previous trial, or in a police interrogation. *Crawford*, 541 US at 68. Affidavits and depositions are also considered to be testimonial. See *id*. at 51-52.

> A pretrial statement is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial. [*People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010).]

Introduction of public records is generally not considered to violate the Confrontation Clause because "having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz v Massachusetts*, 557 US 305, 324; 129 S Ct 2527; 174 L Ed 2d 314 (2009). The Michigan Supreme Court has held that a certificate of mailing from the Michigan Department of State is a "nontestimonial business record created primarily for an administrative reason." *People v Nunley*, 491 Mich 686, 689, 706; 821 NW2d 642 (2012). The Court reasoned that instead of being generated under circumstances which would lead an objective witness to believe it was going to be used at trial, the certificate was created before the crime in question was committed and was created independent of any investigatory or prosecutorial purpose. *Id*. at 689-690.

Like the certificate in *Nunley*, defendant's previous convictions obviously occurred before the assault against TB was committed. In addition, a record of defendant's convictions was not "made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." See *Dendel (On Second Remand)*, 289 Mich App at 453. Any record of defendant's prior convictions was "created for the administration of an entity's affairs," and not for the purpose of proving a fact in the present case. See *Melendez-Diaz*, 557 US at 324. While a certified copy of defendant's prior convictions was not introduced into evidence in the present case, the stipulation to defendant's previous convictions on the record had the same effect. Even though defendant's previous convictions were offered as substantive evidence, they cannot be considered testimonial and therefore are not barred by the Confrontation Clause.[1]

---

[1] Other jurisdictions have addressed whether introducing evidence of a prior conviction violates the defendant's rights under the Confrontation Clause. The Massachusetts Appeals Court in *Commonwealth v Weeks*, 77 Mass App Ct 1, 5, 8; 927 NE2d 1023 (2010) (citations and quotation marks omitted), held that the admission of a certified copy of the defendant's previous conviction did not violate his Confrontation Clause rights because the conviction was created "for the administration of an entity's affairs" and not "for the purpose of establishing or proving

Defendant also argues that his trial counsel was ineffective for stipulating to reading defendant's previous convictions into the record. We begin our analysis by noting that this issue is not properly before this Court because defendant failed to raise the issue in his statement of the questions presented. MCR 7.212(C)(5); *People v Unger*, 278 Mich App 210, 262; 749 NW2d 272 (2008). Regardless, a review of this claim demonstrates that it is also meritless. In order to preserve an ineffective assistance of counsel claim for appeal, a defendant must have moved for a new trial or an evidentiary hearing on that basis in the trial court. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant did not move for a new trial or evidentiary hearing in the trial court. Therefore, this issue is not preserved for appellate review.

The issue whether a defendant was denied the effective assistance of counsel is a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 583; 640 NW2d 246 (2002). The ultimate constitutional issue arising from the claim is reviewed de novo. *Id*. at 582. Any findings of fact are reviewed for clear error. *Id*. at 583. "This Court reviews unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). In order for the defendant to satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland*, 466 US at 695.

Defense counsel's stipulation did not constitute deficient performance. As stated above, the introduction of defendant's prior convictions did not violate his rights under the Confrontation Clause. Therefore, any objection to the introduction of the convictions on Confrontation Clause grounds would have failed. An ineffective assistance of counsel claim cannot be predicated on the failure of trial counsel to make a futile objection. See *Ericksen*, 288 Mich App at 201. In addition, as stated above, counsel likely made a strategic decision not to call the previous complainant to testify in depth regarding defendant's previous convictions. See *Unger*, 278 Mich App at 242-243 ("We will not substitute our judgment for that of counsel on matters of trial strategy . . . ."). Therefore, counsel's performance did not fall below an objective standard of reasonableness. See *Pickens*, 446 Mich at 303.

---

some fact at trial." Again, while a certified copy of defendant's prior convictions was not introduced into evidence in this case, the stipulation had the same effect.

Defendant next argues that the prosecutor engaged in misconduct when she questioned defendant regarding his previous convictions and commented on the convictions during her closing argument. We disagree.

In order to preserve a claim of prosecutorial misconduct, the defendant must contemporaneously object to the alleged misconduct and ask for a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not object to the contested statements made by the prosecution. Therefore, this issue is not preserved for appellate review. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. See *Carines*, 460 Mich at 763.

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. at 64. "The propriety of a prosecutor's remarks depends on all the facts of the case." *Id*. (quotation marks and citation omitted). The prosecutor is not required to argue "in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). "The prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). "[W]here a curative instruction could have alleviated any prejudicial effect we will not find error requiring reversal." *Id*. at 449.

Defendant argues that the prosecutor committed misconduct when she asked defendant the following during cross-examination: "[Y]ou've been convicted before of exactly what you're accused of today, correct?" After defendant responded that he was convicted of the same conduct, the trial court told the prosecutor to "[g]o no further than that." Defendant also argues that the prosecutor committed misconduct during her closing argument when she referred to defendant's previous convictions and stated, "[Y]ou know that he has a proclivity to do this kind of deed." Defendant argues that the prosecutor misled the jury into believing that defendant's prior convictions were for the exact same conduct that he was on trial for in the present case and aroused the prejudice of the jury in doing so.

A review of the record demonstrates that the prosecutor's remarks were proper. During cross-examination, defendant insisted that TB came onto him instead of the other way around. In an effort to discredit this version of events, the prosecutor asked defendant if he had been convicted of the exact same conduct previously. This was clearly an effort to undercut defendant's claim that TB initiated the incident. While defendant is correct that the incidents underlying his previous convictions were not identical to the incident in this case, they all involved criminal sexual conduct with a minor. As stated above, a prosecutor is given leeway in how she chooses to argue the evidence. See *Launsburry*, 217 Mich App at 361. In regard to the prosecutor's remark regarding defendant's proclivity to commit this kind of act, such a statement was precisely the purpose of introducing the previous convictions pursuant to MCL 768.27a. The statute permits introduction of certain previous acts of sexual misconduct to prove the defendant's propensity to commit the charged crime. MCL 768.27a. Furthermore, the court instructed the jury as follows:

The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each sides' legal theories. The lawyers' questions to witnesses are also not evidence. You should consider these questions only as they give meaning to the witness's answers. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge.

Therefore, it cannot be said that defendant was denied his right to a fair and impartial trial. See *Dobek*, 274 Mich App at 63; *Ackerman*, 257 Mich App at 448-449.

Finally, defendant argues, and the prosecution agrees, that he is entitled to a "*Crosby*"[2] remand under our Supreme Court's decision in *Lockridge* after the trial court used judicially found facts to score offense variable (OV) 4 and OV 10, and the assessment of points for the two OVs affected the sentencing guidelines range. We agree.

In order to preserve the issue, defendant must have objected at sentencing to the scoring of the OVs on the basis that the scoring of the OVs required judicial fact-finding that mandatorily increased the floor of the minimum sentencing guidelines range. See *Lockridge*, 498 Mich at 392. Defendant did not raise the issue below. Therefore this issue is not preserved for appellate review. A Sixth Amendment challenge presents a question of constitutional law that we review de novo. *Id*. at 373. We review an unpreserved issue for plain error affecting a defendant's substantial rights. *Id*. at 392.

In *Lockridge*, the Court concluded that "to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e, the defendant's 'mandatory minimum' sentence, that procedure violates the Sixth Amendment." *Lockridge*, 498 Mich at 373-374. The Court's ruling followed the United States Supreme Court's decision in *Alleyne v United States*, 570 US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013), in which the Court held that judicial fact-finding that increases the mandatory minimum sentence violates a defendant's Sixth Amendment rights. See *Lockridge*, 498 Mich at 372-374. The Court in *Lockridge* held that Michigan's sentencing guidelines scheme violates the Sixth Amendment because it "allows judges to find by a preponderance of the evidence facts that are then used to compel an increase in the mandatory minimum punishment a defendant receives." *Id*. at 399. In order to correct this constitutional deficiency, the Court held that Michigan's sentencing guidelines are now advisory. *Id*.

Defendant was sentenced before July 29, 2015. In order for a defendant sentenced before July 29, 2015, to be eligible for a remand for reconsideration of his sentence, the Court held that the defendant must first demonstrate that his OV level was calculated using facts not found by a jury beyond a reasonable doubt or admitted by the defendant. *Lockridge*, 498 Mich at 399. The defendant must also make a showing that without this erroneous calculation, he would have fallen within a different minimum sentencing range. *Id*. If the defendant can make this showing,

---

[2] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

and provided that the defendant was not subject to an upward departure sentence, then the defendant is entitled to a remand to the trial court to determine whether the court would have imposed a materially different sentence but for the unconstitutional constraint on the trial court's sentencing discretion. *Id*. at 397, 399. If the trial court determines that it would have imposed a materially different sentence but for the unconstitutional constraint, then the defendant is entitled to resentencing. *Id*. at 397. The court should only consider the circumstances that existed when it originally sentenced the defendant in making this decision. *Id*. at 398. The trial court must first provide the defendant with an opportunity to avoid resentencing by informing the court that he will not seek resentencing. *Id*. "If the defendant does not so notify the court, it 'should obtain the views of counsel, at least in writing, but "need not" require the presence of the Defendant,' in 'reaching its decision (with or without a hearing) whether to resentence.' " *Id*. (citation omitted). "Upon making that decision, the trial court shall 'either place on the record a decision not to resentence, with an appropriate explanation, or vacate the sentence and, with the Defendant present, resentence in conformity with' this opinion." *Id*. (citation omitted). In sum, the court

> (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant. [*Id*. (citation omitted).]

Defendant was assessed 10 points under OV 4 because the trial court found that TB suffered serious psychological injury requiring professional treatment. See MCL 777.34(1)(a). Defendant was assessed 15 points under OV 10 because he engaged in predatory conduct. See MCL 777.40(1)(a). Neither CSC-III nor CSC-IV contain an element regarding psychological injury or predatory conduct. See MCL 750.520d(1)(a); MCL 750.520e(1)(a). Therefore, these facts were not found beyond a reasonable doubt by the jury. Defendant also never admitted that TB suffered from serious psychological injury or that he engaged in predatory conduct. Therefore, defendant can demonstrate that his OV level was calculated using facts not found beyond a reasonable doubt by the jury or admitted by defendant.

Defendant also can demonstrate that without this erroneous calculation, he would have fallen within a different minimum sentencing range. Defendant received a total of 90 OV points and had 70 points assessed for the prior record variables (PRVs), placing him in the PRV-level E and OV-level VI cell of the sentencing grid for Class B offenses. MCL 777.63. That cell mandates a minimum sentence range of 99 to 160 months' imprisonment. Because defendant was sentenced as a third habitual offender, MCL 769.11, the upper limit of his minimum sentence range was increased by 50% to 240 months' imprisonment, thus mandating a minimum sentence range of 99 to 240 months' imprisonment. MCL 777.21(3)(b).

Without the 25 points assessed under OV 4 and OV 10, defendant would have been placed in the E-V cell of the sentencing grid, which calls for a minimum sentence range of 87 to 145 months' imprisonment. MCL 777.63. With defendant's third habitual offender sentencing enhancement, his minimum sentence range would have been increased to 87 to 217 months' imprisonment. MCL 777.21(3)(b); MCL 777.63. Because defendant was not subject to an upward departure sentence, he is entitled to a remand to the trial court to determine whether the court would have imposed a materially different sentence but for the unconstitutional constraint

on the trial court's sentencing discretion, as described in detail above. See *Lockridge*, 498 Mich at 399.

We affirm defendant's convictions, but remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Peter D. O'Connell
/s/ Michael J. Riordan